**In re CHAPEL GATE APARTMENTS, LTD., Debtor.**

**Bankruptcy No. 386–31035–A–11.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

April 29, 1986.

John B. Atwood, III, L.E. Creel, III, Paul B. Geilich, Creel & Atwood, A Professional Corp., Dallas, Tex., for movant.

Mary Frances Welch, for trustee.

## OPINION AND ORDER DENYING MOTION OF CREEL & ATWOOD FOR RECONSIDERATION OF ORDER CONCERNING TREATMENT OF RETAINER, DENYING APPROVAL OF FUNDS DRAWN TO DATE, AND DIRECTING RESTORATION OF FUNDS DRAWN

HAROLD C. ABRAMSON, Bankruptcy Judge.

On 28 March 1986 Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.*

On 10 April 1986 the law firm of Creel & Atwood filed its application for approval of employment as counsel for Debtor and Debtor-in-Possession. On 30 April 1986 the Court entered an order approving Creel & Atwood as counsel for the Debtor-in-Possession only.[1] The order required counsel to file and circulate the disclosure contemplated by Code § 329 and Bankruptcy Rule 2016(b); required that any retainer or payment received in connection with or in contemplation of the bankruptcy be placed in trust; prohibited counsel from drawing on said funds; and required counsel to obtain a Rule 2017(a) hearing, and to give appropriate notice of the setting. On 8 May 1986 Creel & Atwood filed a Motion for Reconsideration and for Authorization of Attorney's Fees, in which Creel & Atwood requested that employment be approved on behalf of the Debtor, as well as the Debtor-in-Possession; that Creel & Atwood be allowed to draw against the retainers received, as they were paid by the general partner of the Debtor and were, according to Creel & Atwood's agreement with that general partner, "fully earned and nonrefundable";[2] and that the fees already and unilaterally drawn by Creel & Atwood from that retainer be retroactively ratified. The motion also outlined a proposed procedure whereby future draws from the retainer would be documented and disclosed to the United States Trustee, any official committee, and any other party designated by the Court. On 16 May 1986 the motion was considered by the Court, and after entertaining the argument of Creel & Atwood, the Court denied the relief requested. This opinion represents the Court's finding of fact and conclusions of law under Rules 9014 and 7052.

## 1. USE OF RETAINERS BY COURT-APPOINTED COUNSEL IN BANKRUPTCY CASES

The Court has on several occasions raised the questions the subject order was intended to address, both formally (during

---

1. A copy of the subject order is attached hereto as Appendix A.

2. A copy of the agreement is attached hereto as Appendix B.

fee hearings in various cases) and informally (in conversations with members of the local bar). The concept embodied by the subject order has understandably generated concern. The Court will undertake to repeat its concerns and the procedures intended to allay those concerns.

In a number of cases pending before this Court and throughout this District, large retainers have been required by counsel for debtors-in-possession. Given the proliferation of bankruptcy filings and the increased complexity of the newer Chapter 11 filings here and elsewhere in the Southwest, it is neither surprising nor unreasonable that such retainers would be required before counsel would undertake the arduous task of guiding a debtor through a complicated reorganization laden with risk. This Court does not intend to require counsel to shoulder the financial burden of expending considerable professional effort without some mechanism for compensation on a regular basis. It is on this point that some members of the local bar, including Creel & Atwood, have misperceived the focus of the Court's concern and of the subject order. When read carefully, it is clear that the order restricts an attorney's access to the retainer only temporarily, and only until an opportunity arises to explain a proposed schedule of draws against the retainer. The emphasis of the order is disclosure; paraphrased, the order requires only that an attorney disclose the amount and source of a retainer and obtain a hearing before drawing against the retainer. The Court contemplates a fairly informal proceeding, without need for preparation of further applications or entry of further orders, involving mere oral explanation to the Court and any parties sufficiently interested to attend, after notice to those parties typically playing a watchdog role in reorganization proceedings.

### a) *The Statutory Framework*

■ The relevant statutory provisions are not ambiguous. Bankruptcy Code § 329 leaves no doubt that counsel for a debtor must disclose the compensation paid or agreed to be paid, regardless of the source. In addition, § 329 unequivocally grants the Court the power to review *and order the return* of any payment made within one year of the filing of the petition, *regardless of the source.* Moreover, any agreement concerning compensation executed *may be cancelled* by the Court.[3]

The legislative history of § 329 sets forth the basic premise of the grant of such powers to the Court. "Payments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and *should be subject to careful scrutiny.*" S.Rep.No. 95–989, 95th Cong., 2d Sess. 39 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5825 (emphasis added). *See also In re Furniture Corporation of America,* 34 B.R. 46 (Bkrtcy.S.D. Fla.1983) (fees paid to debtor's counsel may be reviewed regardless of their source, as the source determines only the party to whom the Court may order a refund); *In re Perros,* 14 B.R. 515, 517 (Bkrtcy.E.D.N. Y.1981) ("the power of this court to review attorney's fees is ... expressly authorized under § 329 of the Bankruptcy Code ... the policy underlying this authority is to prevent overreaching by the debtor's attor-

---

**3.** Bankruptcy Code § 329 provides as follows:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, *whether or not such attorney applies for compensation under this title,* shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after *one year before the date of* the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, *the court may cancel any such agreement, or order the return of any such payment,* to the extent excessive to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11 or 13 of this title; or

(2) the entity that made such payment.

neys and to protect creditors"); *In re Swartout,* 20 B.R. 102, 105 (Bkrtcy.S.D. Ohio 1982) ("the traditional elements of the bargaining process do not typically exist in the formation of contracts between debtors and their attorneys; and, therefore, the role of the court ... is to protect the interests of creditors of the estate by allowance of compensation allegedly due an attorney only to the extent actually and reasonably compensable for the services provided"); *In re Crestwell,* 30 B.R. 619 (Bkrtcy.D.D.C. 1983). In sum, these principles are neither new [4] nor difficult to understand, given the clarity of § 329 and its predecessors.[5]

Because this case was filed under Chapter 11, it is also instructive to examine the criteria by which a proposed plan of reorganization must be tested. One such criterion, set forth in § 1129(a)(4), as recently amended,[6] requires that any payment made under a plan for "services or for costs and expenses in or in connection with the case, has been approved by or is subject to the approval of the Court as reasonable." Before counsel can expect to have a plan confirmed, there must be a provision for review by the Court of any professional compensation. This requirement further reinforces what has been the clear philosophy of bankruptcy jurisprudence since 1898, i.e., that *any* fees promised or received to or by debtor's counsel in connection with or in contemplation of bankruptcy are subject to review by the Court. *See In re Southern Industrial Banking Corporation,* 41 B.R. 606 (Bkrtcy.E.D.Tenn.1984) ("Because the applicants seek payment for services rendered in connection with the debtor's plans, or incident to the debtor's case, this court clearly has jurisdiction to rule on the reasonableness of the payments sought, even though the source of payment is .... not the debtor's estate" (citing § 1129(a)(4)(B))).

It should also be noted that to allow an attorney for a debtor to draw against a retainer at will and without prior Court approval is a *de facto* emasculation of § 331, which sets forth precise criteria concerning an application for and payment of interim compensation.[7] Any payment to counsel before the closing of the case is by definition interim compensation, and to allow counsel to receive payments, whether consisting of unilateral draws from a prepetition retainer or outright postpetition cash transfers, without notice to the creditors and approval by the Court, is blatantly inconsistent with the statute, and such practices will be neither condoned nor permitted by this Court.

(b) *The Procedural Framework*

■■■ Code § 329 is implemented by Bankruptcy Rule 2017.[8] Consistent with

---

4. *See In re Wood & Henderson,* 210 U.S. 246, 253, 28 S.Ct. 621, 624–25, 52 L.Ed. 1046 (1908); *In re Arlan's Department Stores, Inc.,* 615 F.2d 925 (2d Cir.1979); *In re Futuronics Corporation,* 655 F.2d 463 (2d Cir.1981); *Tripp v. Mitschrich,* 211 F. 424 (8th Cir.1914); *Quinn v. Union National Bank,* 32 F.2d 762 (8th Cir.1929); *Conrad, Rubin & Lesser v. Pender,* 289 U.S. 472, 478, 53 S.Ct. 703, 705, 77 L.Ed. 1327·(1933).

5. *See* 11 U.S.C. 96(d) (West 1978) (§ 60(d) of the former Bankruptcy Act); *see also* former Bankruptcy Rules 219 and 220.

6. Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353 ("1984 Amendments").

7. Bankruptcy Code § 331 states as follows:
 A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order of relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. *After notice and a hearing,* the *court* may allow and disburse to such applicant such compensation or reimbursement.
 (Emphasis added).

8. Bankruptcy Rule 2017 provides as follows:
 (a) PAYMENT OR TRANSFER TO AN ATTORNEY BEFORE COMMENCEMENT OF CASE.
 On motion by any party in interest *or on the court's own initiative,* the court after notice and hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor, to an attorney for services rendered or to be rendered is excessive.

the terms of that statute and its underlying policy, an examination of transactions between a debtor and the attorney for the debtor may be requested by a party in interest or required by the Court *sua sponte*. Subsection (a) of the Rule, by its terms, grants the Court the power to examine *any* prepetition payment or transfer to an attorney, made in contemplation of the filing, by or for the benefit of the debtor, for services rendered or to be rendered. Similarly, subsection (b) of the Rule empowers the Court to examine postpetition payments or transfers to an attorney, by or for the benefit of the debtor, for services "in any way" related to the case. When considered in conjunction with § 329, Rule 2017 clearly permits the Court to inquire into, examine, and if appropriate, set aside *any* prepetition transfer from a debtor to debtor's counsel if such transfer was made in connection with or in contemplation of the filing of the petition. The Court also has the power to inquire into, examine, and if appropriate, cancel any agreement entered by debtor and debtor's counsel in contemplation of services to be rendered in connection with bankruptcy. The terms of the agreement between Creel & Atwood and this Debtor or this Debtor's principals are not binding upon the Court or its rulings concerning the disposition of the retainer, as a matter of law. Describing the retainer as "fully earned and nonrefundable" does not make it so, as the Court, and only the Court, has the power and duty to determine whether, and to what extent, any sum has been earned or should be returned.

 (b) PAYMENT OR TRANSFER TO AN ATTORNEY AFTER COMMENCEMENT OF THE CASE.

On motion by the debtor *or on the court's own initiative*, the court after notice and hearing may determine whether any payment of money or any transfer of property, or any agreement therefor, by the debtor to an attorney after the commencement of a case under the Code is excessive, whether the payment or transfer is made or is to be made directly or indirectly, if the payment, transfer, or agreement therefor is for services in any way related to the case.

### c) *The Caselaw*

 It must be emphasized that to this point the Court has discussed only the statute and implementing rules. Bankruptcy is perhaps unique in that attorney's fees are by statutory mandate placed within the particular discretion of the Court, notwithstanding any of the terms of any agreement between Court-appointed counsel and client. *In re Riggin*, 40 B.R. 458, 459–60 (Bkrtcy.D.Md.1984); *Matter of Olen*, 15 B.R. 750, 752 (Bkrtcy.E.D.Mich.1981). Courts have consistently adopted this view, as demonstrated by the language of *In re Kinderhaus Corporation*, 58 B.R. 94 (Bkrtcy.D.Minn.1986).

A prepetition retainer taken by a debtor's attorney for services to be rendered and costs to be incurred during the pendency of a bankruptcy case is *held in trust*, except to the extent that attorney's fees are *allowed by the Court and ordered paid* pursuant to 11 U.S.C. § 330 and § 331, until the case is closed or until the Court orders otherwise. Such a retainer, taken prior to the filing of a petition, becomes property of the estate upon commencement of the case, subject however, to the terms of the trust. *See* 11 U.S.C. § 541(d).

*Id.* at 97 (emphasis added).

It will doubtless be argued that "the terms of the trust" are set by the prepetition agreement between counsel and the debtor (or, in this case, the principals of the debtor). Such an argument would assert that, because the letter agreement characterized the retainer as "fully earned and nonrefundable", the "trust" to which *Kinderhaus* alludes would permit counsel to

*See also* the Advisory Committee Note to Rule 2017: "This rule, like § 60(d) of the Act and § 329 of the Code, is premised on the need for and appropriateness of judicial scrutiny of arrangements between a debtor and his attorney to protect the creditors of the estate and the debtor against overreaching by an officer of the court who is in a peculiarly advantageous position to impose on both the creditors and his client."

draw on the retainer unilaterally and at will, without review or approval by the Court. As noted above, however, fees in bankruptcy cases are not entirely a matter of contract between counsel and client, and by statute any such agreement, and therefore the terms of the "trust", are subject to review, modification, and outright cancellation by the Court. Any such agreement is nothing more than a framework for an award by the Court, with whom decisions concerning extent and frequency of compensation are squarely and solely placed. Consequently, the terms of the "trust" are determined by statute and by the sound exercise of the Court's discretion. The relevance and impact of any agreement between debtor and counsel are accordingly limited.

> The governing law obligates the court to see that the awards (of attorney's fees) are within reason and that they are in accordance with local standards respecting hourly rates and represent compensation for actual legal services which are necessary to the estate in bankruptcy ... (t)he provisions of § 331 ... which provide for the awarding of interim compensation quarterly to attorneys in bankruptcy proceedings, makes it clear that counsel are to be circumspect respecting exacting their fees in advance; that, in most imaginable instances, they should not collect awards of attorneys fees until they have actually been *earned and awarded by order of the Court.*

*Matter of Colin,* 44 B.R. 709 (Bkrtcy.W.D. Mo.1984) (emphasis added). Any attorney who unilaterally draws against a retainer while representing a debtor in bankruptcy is plainly in violation of the strictures of the Code. Such a practice "is neither warranted nor condoned by the governing statutes ... in respect of awards of attorneys fees. In most imaginable instances, it would pre-empt the bankruptcy court of its rightful power and duty to determine the

reasonableness and legality of attorneys fees *before they are awarded." Id.* at 712 (emphasis added). Indeed, a failure of counsel to obey the mandate of § 329 and Rule 2016 concerning disclosure, and by implication review by the Court, is a basis for entry of an order denying compensation and requiring the return of sums already paid. *In re Whitman,* 51 B.R. 502, 506–7 (Bkrtcy.D.Mass.1985); *In re Lavender,* 48 B.R. 393, 396 (Bkrtcy.E.D.Ark.1984); *In re Meyer,* 50 B.R. 3, 4 (Bkrtcy.S.D.Fla.1985). The order in this case is actually designed to rescue counsel and creditors from the pitfalls of failing to disclose the compensation received and to be paid. Even where the failure to disclose is a result of negligence, rather than design, fees may be disallowed *in toto. In re Meyer, supra.* The procedure envisioned here will ultimately work to the advantage of all parties. Creel & Atwood will be assured that its draws against the retainer are authorized, subject, of course to final review; the creditors will be aware of the amount paid and the mechanism by which payment will be made; and the debtor and its principals will be assured of the active involvement of counsel with an outstanding reputation. On balance, Creel & Atwood will not be unduly burdened by the procedure contemplated herein. Creel & Atwood's motion will therefore be overruled.

## 2. THE DEBTOR/DEBTOR–IN–POSSESSION DICHOTOMY

Creel & Atwood have also requested that they be appointed counsel for the Debtor, as well as for the Debtor-in-Possession. This is little more than a throwback to an outdated practice tolerated to some extent under the Act,[9] but eliminated under the Code. The Fifth Circuit addressed precisely this problem more than three years ago.

> We must ... note ... that under the Bankruptcy Code of 1978 any distinction between the attorney for the "debtor"

---

**9.** *See Cle-Ware Industries, Inc. v. Sokolsky,* 493 F.2d 863, 871 (6th Cir.1974) (which "strongly disapprove(d) the practice of appointing separate counsel for the debtor-in-possession and at the same time compensating another attorney at the expense of the bankrupt estate in his capacity as counsel for the debtor for services rendered after the filing of a plan of arrangement").

and the attorney for the "debtor-in-possession" may not be tenable in a Chapter 11 proceeding under this new Code. Section 1101(1) of the Code, 11 U.S.C. § 1101(1), of Chapter 11 defines a "debtor-in-possession" as including the "debtor" for purposes of that chapter [footnote omitted]. The provisions regulating the conduct and powers of a "debtor-in-possession" (where no trustee has been appointed)—including the requirement for court approval of employment of an attorney—thus seems to apply to a "debtor" once he files a petition for reorganization under the Chapter 11 of the new Code ... [under § 101(1) ] in a chapter 11 proceeding *there is no distinction between the "debtor" and the "debtor-in-possession" (where no trustee has been appointed) with regard to acts or transactions performed on its behalf subsequent to the filing of the reorganization petition.*

*Matter of Triangle Chemicals, Inc.,* 697 F.2d 1280, 1290 (5th Cir.1983) (emphasis added).

As the Fifth Circuit amply explained, where a trustee is not appointed in a case under Chapter 11, and the debtor remains in possession of the prepetition assets and administers them for the benefit of the creditor body pursuant to Code § 1107, there are not, for purposes of postpetition services rendered by Court-appointed counsel, two separate legally cognizable entities. *There is no debtor entity separate and apart from the debtor-in-possession.*[10] Under § 1107, a debtor is either a debtor-in-possession, and therefore occupies a strictly fiduciary role, or it is not, in which case a trustee administers the estate for the benefit of the creditors. Where no trustee has been appointed in a case under Chapter 11, the terms "debtor" and "debtor-in-possession", though used interchange-

ably for convenience, are in substance mutually exclusive; an entity can be one or the other but cannot simultaneously occupy both roles. To the extent a debtor's interests diverge from the interests and duties of a debtor-in-possession, i.e., the interests and duties of a trustee, an inherent and unresolvable conflict arises which, without so holding at *this* point in *this* matter, may be a basis for the appointment of a trustee.

Even assuming, strictly *arguendo*, that the dichotomy between debtor and debtor-in-possession, did exist and could be recognized, it is obvious that any actions taken on behalf of the debtor, for its interests alone and distinct from the duties of a debtor-in-possession, would not be compensable from the estate absent a showing of some benefit thereto. It has long been the rule in this Circuit and others that debtor's counsel should not be compensated by the estate for services which benefit only the debtor. *In re Orbit Liquor Store,* 439 F.2d 1351, 1354 (5th Cir.1971); *Matter of Jones,* 665 F.2d 60 (5th Cir.1982); *In re Mann,* 4 B.C.D. 514 (Bkrtcy.S.D.Tex. 1978); *In re Howerton,* 23 B.R. 58 (Bkrtcy. N.D.Tex.1982) ("the Code makes no change in the criteria for services compensable from estate assets"). *See also In re Ezell,* 45 B.R. 13 (Bkrtcy.M.D.Tenn.1984); *In re Epstein,* 39 B.R. 938 (Bkrtcy.D.N.M.1984); *In re Zweig,* 35 B.R. 37 (Bkrtcy.N.D.Ga. 1983); *In re Rhoten,* 44 B.R. 741 (Bkrtcy. M.D.Tenn.1984); *In re Spencer,* 48 B.R. 168 (Bkrtcy.E.D.N.C.1985). It is equally clear that counsel acting on behalf of a debtor may not be compensated for services which are in the province of a trustee or debtor-in-possession. *In re Spencer, supra,* at 171. The request tendered by Creel & Atwood is therefore futile and irrelevant, and will be denied.

While this Court initially approved the employment of Creel & Atwood as

10. Even if the inconsistency implicitly advocated by Creel & Atwood were to be given effect, it seems clear that Creel & Atwood could not be employed on behalf of the estate as their representation and advocacy of the debtor's interests, distinct from the interests of the estate, would prevent them from being "disinterested" as con-

templated by § 327, made applicable through § 1107. The situation contemplated by Creel & Atwood is analogous to simultaneous representation of both a debtor and a trustee appointed under § 1104. The request by Creel & Atwood, if honored, would therefore be self-defeating.

counsel for the Debtor-in-Possession, materials brought to the Court's attention in connection with the motion for reconsideration, specifically, the retainer agreement with the general partner of the Debtor-in-Possession, have given rise to concerns as to whether Creel & Atwood can simultaneously represent both a debtor-in-possession, its general partner, and sister limited partnerships in and apparently on the verge of their own Chapter 11 cases. Creel & Atwood is apparently satisfied that no conflicts exist; the Court is not so certain. The Court will not delve into such potential conflicts at this time, trusting that Creel & Atwood will examine their position in these cases, with the possible consequences of § 328(c) firmly in mind. Creel & Atwood's task, before any application for interim or final compensation (aside from the Rule 2017 hearing discussed earlier) must demonstrate the *absence* of any conflict, regardless of the presence or absence of any objection by any party-in-interest on this point. *See In re Freedom Solar Center, Inc.*, 776 F.2d 14 (1st Cir.1985) (construing Maine Bar Rule virtually identical to D.R. 5–105 of the Texas Code of Professional Responsibility); *In re Hoffman*, 53 B.R. 564 (Bkrtcy.W.D.Ark.1985). Attention to the ruling and discussion of *In re Roberts*, 46 B.R. 815 (Bkrtcy.D.Utah 1985) is especially recommended, to whatever extent they may apply in the case at bar.

## 3. CONCLUSION

Consistent with a long and well-respected tradition of involving a debtor and its attorney, and pursuant to the mandate of Bankruptcy Code § 329 and 331 and Bankruptcy Rules 2016 and 2017, this Court has, and will continue to exercise, the power to review fees paid or promised to an attorney for a debtor from whatever source. The Court has, and will continue to exercise, the power to review any agreement (between an attorney for a debtor and any other party) concerning compensation for services connected in any manner with a bankruptcy case.

Under the Bankruptcy Code and the rulings of the Fifth Circuit, the Court cannot bifurcate the debtor-in-possession such that separate entities, i.e., a debtor distinct from the debtor-in-possession where no trustee has been appointed in a case under Chapter 11, could be entitled to separate representation, albeit by the same counsel.

An order will be prepared denying the motion for reconsideration and directing the restoration of any funds drawn from the retainer received, pending a hearing under Rule 2017 as prescribed by the order attached hereto as Appendix A.

### APPENDIX A

### ORDER APPROVING EMPLOYMENT OF COUNSEL

On the 18th day of April, 1986, the Court considered the Application of Creel & Atwood to be employed as counsel for the Debtor-in-Possession, and the Court, being of the opinion that the application is well taken, will hereby approve same. It is therefore

ORDERED that the employment of Creel & Atwood, as counsel for Chapel Gate Apartments, Ltd., Debtor-in-Possession, be, and it is hereby, approved. It is further

ORDERED that said counsel shall, within ten days of the entry hereof, file with the Court and serve upon the United States Trustee, the twenty largest unsecured creditors, and any other Court-appointed counsel herein, the reports required by Bankruptcy Code § 329 and Bankruptcy Rule 2016(b). It is further

ORDERED that said counsel shall disclose in said report the amount and source of any retainer or any other payment received by said counsel in connection with or in contemplation of this case or any proceeding herein. It is further

ORDERED that said counsel shall place any such retainer or payment *in trust*, and shall not draw on said *trust funds*, pending a hearing for purposes of review by the Court of the proposed disposition of said trust funds during the pendency of this case or any proceedings herein, pursuant to

Bankruptcy Rule 2017(a). Counsel are hereby directed to obtain a setting for this purpose, and to give not less than ten days notice of same to the foregoing parties. It is further

ORDERED that, pursuant to the ruling of *Matter of Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1255–56 (5th Cir.1986), Counsel shall prepare analyses and reports on all applications for compensation filed by any Court-appointed professional person. Such reports shall be circulated to the Court, the United States Trustee, and any Committee, Trustee, or Examiner now or hereinafter appointed in this case, not less than five days prior to the scheduled hearing on such applications.

## APPENDIX B

CREEL & ATWOOD

A PROFESSIONAL CORPORATION

ATTORNEYS AND COUNSELLORS

3100 LTV TOWER

1525 ELM STREET

DALLAS TEXAS 75201–3566

March 28, 1986

Vesteq Financial Corporation
1825 S. Grant Street
Suite 500
San Mateo, California 94402
Attention: Mr. Bob Schleizer

Re: Limited Partnerships And Corporate Matters

Dear Mr. Schleizer:

This letter is to confirm the engagement of our law firm on behalf of Vesteq Financial Corporation, in its own capacity, and as general partner of numerous limited partnerships, and on behalf of its affiliates and subsidiaries which it controls through stock ownership, direct or indirect.

As you know, Vesteq Financial Corporation, its affiliates, subsidiaries, and the limited partnerships in which it serves as general partner, are all facing varying degrees of financial difficulty at the present time and while all such entities are separate and distinct, the problems are common and the possible remedies and solutions are common to all the referenced entities. We concur in your analysis that there is no conflict of interest between any of these entities since what will be of benefit to one entity will, in turn, benefit another or not cause harm to another. We understand your desire to try to rehabilitate and reorganize Vesteq Financial Corporation and its various corporate affiliates and subsidiaries and to rehabilitate each of the limited partnerships in which it serves as the general partner, in the most efficient and economical manner feasible.

The fee arrangement regarding our engagement is as follows: an hourly basis plus a bonus based upon the results achieved at the conclusion of this matter. Our hourly rates will be as follows:

| Attorney | Rate |
|---|---|
| | $250.00 |
| | $250.00 |
| | $200.00 |
| | $165.00 |
| | $165.00 |
| | $ 65.00 |

plus reimbursement of all out-of-pocket expenses and it is to be noted that travel time is billed at not less than ten (10) hours per day, and in the event two (2) lawyers from this firm are required on a given matter, such time will be credited for one-half of the hourly rate for the attorney with the lowest hourly rate.

We acknowledge the receipt of a total of $125,000.00 in retainers at the present time.

In the event a Chapter 11 is necessary to file for any limited partnership the retainer shall be $25,000.00 for each Chapter 11 proceeding. That retainer is fully earned and nonrefundable upon its payment and receipt. For such retainer you will be entitled to services to be provided by this firm at the hourly rates specified above up to the full amount of the retainer; however, if, for any event, such hourly rates did not total the amount of the original retainer the balance will be considered the bonus payment to this firm for its advice, consultation and professional services rendered, and as the retainer for this firm's willingness to undertake this engagement.

Vesteq Financial Corporation, its affiliates and subsidiaries, each guarantees and assures our fee and Vesteq Financial Corporation guarantees and assures our fee in its capacity as a general partner in each limited partnership concerned. To the extent any proceedings are necessary in any bankruptcy court and to the extent the law permits this firm to be paid or reimbursed for any of its professional fees, then such fees as may be awarded by a bankruptcy court will be credited against the previous fees paid to this firm so that there will be no duplication of collected fees by this law firm.

In the event that Vesteq Financial Corporation itself were to ever become a debtor, then we would represent Vesteq Financial Corporation in its own corporate proceeding or as general partner in the limited partnerships as the board of directors of Vesteq Financial Corporation may instruct in such event.

We will set up our billing files for Vesteq Financial Corporation and a separate billing for the various limited partnerships or affiliates or subsidiaries, as they may be identified by you to us.

You will receive monthly statements, which will be due by the tenth (10th) day of the following month and in the event our fees are not kept current, when due, then this firm reserves the right to withdraw as counsel of record in any proceeding and you so acknowledge such right.

We recognize that this is a complex situation and will endeavor to assist Vesteq Financial Corporation, its affiliates and subsidiaries, and limited partnerships to rehabilitate and restructure its financial obligations in a successful manner by out of court arrangements or through Chapter 11 proceedings, if necessary. In the event facts or circumstances ever come to your attention which would indicate that there is, in fact, a conflict of interest between any of the entities referenced above or a potential conflict of interest, then you are to so advise us promptly and in such event this law firm would withdraw from representation of all entities referenced above or withdraw from designated entities as the circumstances may require. In any event, all fees would have been fully earned in the event of such withdrawal.

If you agree to the above and foregoing and it does constitute our agreement and understanding, then Vesteq Financial Corporation is asked to execute this letter agreement, not only in its own behalf, but as majority shareholder and control person of its affiliates and subsidiaries, and as general partner of all limited partnerships referenced above. Please return the executed original of this letter to the undersigned and retain the executed copy for your file.

580

Sincerely,

Its President

READ, ACKNOWLEDGED AND AGREED:

VESTEQ FINANCIAL CORPORATION IN ITS OWN CAPACITY, AND IN ITS CAPACITY AS MAJORITY OWNER AND CONTROL PERSON OF ITS AFFILIATES AND SUBSIDIARIES, AND AS GENERAL PARTNER OF ALL LIMITED PARTNERSHIPS IN WHICH IT SERVES IN SAID CAPACITY

By: _____

Its: _____

JBA/bd

Enclosure

CREEL & ATWOOD

A PROFESSIONAL CORPORATION

ATTORNEYS AND COUNSELLORS

3100 LTV TOWER

1525 ELM STREET

DALLAS, TEXAS 75201–3566

April 2, 1986

Vesteq Financial Corporation
1825 S. Grant Street
Suite 500
San Mateo, California 94402

Attention: Mr. Bob Schleizer

Re: Amendment To Engagement Letter Dated March 28, 1986

Dear Mr. Schleizer:

At the beginning of Page Two of the above-referenced my secretary made an error regarding the hourly fees for William N. Rees, Jr. and the Law Clerk/Paralegal. Mr. Rees' hourly rate should be $200.00 and not $195.00. The Law Clerk/Paralegal should be $65.00 not $75.00.

Would you please execute this letter, where indicated, agreeing to this rate structure referenced above in conjunction with my letter of March 28, 1986. Please retain the copy of this letter for your file and return the original to me.

Sincerely,
CREEL & ATWOOD,
A Professional Corporation
By: /s/ John B. Atwood III
John B. Atwood III
Its President

READ, ACKNOWLEDGED AND AGREED TO:

VESTEQ FINANCIAL CORPORATION IN ITS OWN CAPACITY, AND IN ITS CAPACITY AS MAJORITY OWNER AND CONTROL PERSON OF ITS AFFILIATES AND SUBSIDIARIES, AND AS GENERAL PARTNER OF ALL LIMITED PARTNERSHIPS IN WHICH IT SERVES IN SAID CAPACITY

By: _____

Its: _____

JBA/bd

Enclosure