**In re OFFICE PRODUCTS OF AMERICA, INC., Debtor.**

**Bankruptcy No. 91–51849–C.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Jan. 22, 1992.

**984**

Claiborne B. Gregory, Jr., Gresham, Davis, Gregory, Worthy & Moore, San Antonio, Tex., for debtor.

Robert L. Barrows, Lelaurin & Adams, P.C., San Antonio, Tex., Sp. Counsel for trustee.

## DECISION ON APPLICATION OF GRESHAM, DAVIS FOR COMPENSATION AND REIMBURSEMENT

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing the application of Gresham, Davis, Gregory, Worthy & Moore for compensation and reimbursement. Upon consideration thereof, the court finds and concludes that fees should be awarded as provided herein.

### BACKGROUND FACTS

This decision is the sequel to the decision on the Cox & Smith fee application in this same case. *See* Decision and Order on Application of Debtor's Counsel for Compensation and Reimbursement, (January 8, 1992). Once the case was converted to Chapter 11, Cox & Smith withdrew as counsel for OPA, and the law firm of Gresham, Davis, Gregory, Worthy & Moore was employed to represent the debtor in possession. The reorganization was short-lived, however, as the trustee sought to reconvert the case to chapter 7, supported by the unsecured creditors of the estate. After a contested hearing, at which the court concluded the plan was neither feasible nor in the best interests of creditors, the court granted the motion, placing the debtor back into liquidation.

Gresham, Davis has presented a fee application for its services as counsel for the debtor-in-possession, seeking $18,892.50 in compensation for services and $2018.61 in reimbursement for expenses. Objections to this fee application were filed by the trustee and joined by creditors and the unofficial creditors' committee. These objections raise several issues: (1) Did Gresham, Davis hold or represent an interest adverse to the estate, in violation of the requirements of § 327(a)? (2) Did Gresham, Davis have an impermissible conflict of interest resulting from its representation of both the debtor-in-possession, as well as the debtor's directors, officers, and/or shareholders? (3) Should Gresham, Davis be compensated, from the estate, for fighting the efforts to reconvert the case to a Chapter 7? (4) Did Gresham, Davis needlessly duplicate services previously rendered by Cox & Smith, such that Gresham, Davis should not be compensated, from the estate, for such services?

### DISCUSSION

(1) *Did Gresham, Davis hold or represent an interest adverse to the estate, in violation of the requirements of Section 327(a)?*

■ Because Gresham, Davis was hired by the debtor-in-possession, its employment fell within the ambit of § 327, supplemented by § 1107. Section 327(a) permits the "trustee, with the court's approval, [to] employ one or more attorneys ... *to represent or assist the trustee in carrying out the trustee's duties under [Title 11]."* 11 U.S.C. § 327(a). Section 1107 provides that the "debtor-in-possession shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee serving in a case under [Chapter 11]." 11 U.S.C. § 1107. Read together, the two sections permit the debtor-in-possession, with

the court's approval, to hire an attorney to assist it in carrying out its duties under Title 11.[1]

Section 327(a), however, poses two requirements which must be met by the attorney (law firm) hired by the trustee (debtor-in-possession). First, § 327(a) forbids the trustee (debtor-in-possession) from hiring an attorney who holds or represents an interest adverse to the estate. Second, § 327(a) requires the attorney hired by the trustee (debtor-in-possession) to be a "disinterested" person. The Code provides five definitions of "disinterested person," including a person who "does not have an interest materially adverse to the interest of the estate or *of any class of creditors* or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor...." 11 U.S.C. § 101(14) (emphasis added).

Section 328(c) mirrors § 327(a) by authorizing the court to "deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 ... if, at *any time* during such professional's employment under section 327 or 1103 ..., such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed" 11 U.S.C. § 328(c) (emphasis added).

The Code does not define "an interest," but at least one court has determined that the phrase is "primarily used ... in its broad commercial and economic sense to mean any property (real or personal), money, credit, service, benefit, entitlement, right, expectation, claim or value in any form, whether vested or unvested, contingent or noncontingent, liquidated or unliquidated, disputed or undisputed, to which the divided or undivided right or title of any holder thereof may attach under any foreign or domestic constitution, statute, ordinance, contract, or custom." *In re Roberts,* 46 B.R. 815, 826 (Bankr.D. Utah 1985), *aff'd in part, rev'd in part,* 75 B.R. 402 (D. Utah 1987). In the context of § 327(a) "interest" might also mean "the predisposition that is ordinarily created by family ties, friendship, and by fiduciary or official responsibilities." *Id.* To "hold an adverse interest" means that "two or more entities possess or assert mutually exclusive claims to the same economic interest, thus creating either an *actual or potential* dispute between the rival claimants as to which, if any, of them the disputed right or title to the interest in question attaches under valid applicable laws." *Id.* at 826–27 (emphasis added). "Holding an adverse interest" can also mean possessing a "predisposition or interest under circumstances that render such a bias in favor of or against one of the entities." *Id.*

Holding "an interest adverse to the *estate*" means "(1) to possess or assert any economic interest that *would tend to lessen the value of the bankruptcy estate* or that would create either an actual or potential *dispute in which the estate is a rival claimant;* or (2) to possess a predisposition under circumstances that render such a bias against the estate." *Id.* (emphasis added). To "represent an adverse interest" means "to serve as agent or attorney for any individual or entity holding such an adverse interest." *Id.* The Fifth Circuit has stated that the prohibition against the debtor in possession's attorney holding or representing an interest adverse to the estate

appears broad enough to include anyone who in the *slightest degree* might have some interest or relationship that would color the independent and impartial attitude required by the Code.... Indirect or remote associations or affiliations, as well as direct, may engender conflicting loyalties. The purpose of the rule is to prevent even the *emergence* of a conflict irrespective of the integrity of the person under consideration....

---

1. In turn, § 330(a)(1) authorizes "reasonable compensation for actual, necessary services rendered by such ... attorney ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under [Title 11]." 11 U.S.C. § 330(a). Section 330(a)(2) also authorizes reimbursement for "actual, necessary expenses" incurred by the attorney. *Id.*

**986**

*In re Consolidated Bancshares,* 785 F.2d 1249, 1256 (5th Cir.1986) (quoting from 2 *Collier on Bankruptcy* ¶ 327.03 at 312–19, 20 (15th ed.1985)) (emphasis added, footnotes omitted).

█ In a Chapter 11 case, where the debtor remains in possession of the prepetition assets and administers them for the benefit of the creditors, the debtor occupies a strictly fiduciary role. *In re Chapel Gate Apts., Ltd.,* 64 B.R. 569, 576 (Bankr. N.D.Tex.1986). As the *Chapel Gate* court explained:

> Where no trustee has been appointed in a case under Chapter 11, the terms "debtor" and "debtor-in-possession," though used interchangeably for convenience, are in substance mutually exclusive; an entity can be one or the other but *cannot* simultaneously occupy both roles. To the extent a debtor's interests diverge from the interest and duties of a debtor-in-possession, i.e., the interests and duties of a trustee, an *inherent and unresolvable* conflict arises which ... may be a basis for the appointment of a trustee.... any actions taken on behalf of the debtor, for its interests alone and distinct from the duties of the debtor-in-possession, would not be compensable from the estate absent a showing of some benefit thereto. It has long been the rule in [the Fifth Circuit] and others that *debtor's counsel should not be compensated by the estate for services which benefit only the debtor.*

*Id.* (citing several cases for the same proposition, including *In re Jones,* 665 F.2d 60 (5th Cir.1982) and *In re Orbit Liquor Store,* 439 F.2d 1351, 1354 (5th Cir.1971)).

█ Even if Gresham, Davis began as a "disinterested person," then, compensation for Gresham, Davis' services might be denied if, at any time during its employment by the debtor-in-possession, the law firm ceased to be "disinterested" or came to represent an interest adverse to the estate. *In re Diamond Lumber, Inc.,* 88 B.R. 773, 776 (Bankr.N.D.Tex.1988). The trustee argues that in fighting the reconversion of the case, Gresham, Davis actually represented the interests of OPA's management,

which proved to be "materially adverse to the interest" of the estate and of the creditors. In the process, Gresham, Davis ceased to be "disinterested."

A review of the fee detail attached to the fee application indicates that, indeed, at some point in the representation, the interests of the officers and directors of OPA may have become elevated above those of the estate. The plan that management proposed could, under the facts of this case, redound only to the benefit of the owners of the enterprise and not to its creditors, for, as the court found at the hearing on reconversion, the plan shifted virtually all of the risk of nonpayment onto unsecured creditors who, under chapter 7, were looking to a pot of cash for certain payment within a relatively short time frame. Such a plan, absent creditor support, could only succeed if it were forced onto those creditors under the "cram down" provisions of § 1129(b), and this plan lacked creditor support. The trustee would have this court hold that, in essence, proposing such a plan necessarily created a conflict of interest, and debtor's counsel, by advancing that plan in the face of creditor opposition, developed a conflict of interest, justifying their disqualification under § 327(a) and a concomitant disallowance of their fees under § 328(c).

There are serious policy ramifications to such a holding, however, which auger against deciding the case on that basis. The cramdown provisions of the Code are an expression of congressional intent regarding the importance of reorganization values even in the face of considerable creditor opposition, provided those creditors' interests are appropriately protected. H.Rep. No. 595, 95th Cong., 1st Sess. 220–21, 416–18 (1977). Were we to hold here that pursuing those goals over the objections of creditors in and of itself created a conflict of interest, lawyers would be discouraged from even representing debtors in the face of creditor opposition (even if the plan could pass muster under § 1129(b)), for fear of not being paid.

Such a result is so antithetical to the structure of the reorganization chapters

that we must retreat from such a harsh ruling. If there is a basis for the trustee's objections to the fees requested, this is not it (at least not under the facts of this case). We turn to the other arguments raised by the trustee.

(2) *Did Gresham, Davis have an impermissible conflict of interest resulting from its representation of both the debtor in possession, as well as the debtor's directors, officers, and/or shareholders?*

■ A closely related objection raised by the trustee is that the firm was, in actuality, representing not the estate but the officers and directors of the company. While much of what has already been said already resolves this issue, we nonetheless examine it because of the unique problems faced by counsel who represent corporate debtors in chapter 11 cases.

The conflict of interest problems posed by an attorney's representation of an organization are complex and extend well beyond the bankruptcy arena. Rule 1.12(a) of the Texas Disciplinary Rules of Professional Conduct, for example, clearly states that a "lawyer employed or retained by an organization represents the entity." The statement seems simple enough, but its ramifications are often confusing and far-reaching. Official Comment # 1 elaborates on, and seeks to clarify the implications of, this rule:

1. A lawyer employed or retained to represent an organization represents the organization as distinct from its directors, officers, employees, members, shareholders or other constituents. Unlike individual clients who can speak and decide finally and authoritatively for themselves, an organization can speak and decide only through its agents or constituents such as its officers or employees. In effect, the lawyer-client relationship must be maintained through a constituent who acts as an intermediary between the organizational client and the lawyer. This fact requires the lawyer under certain conditions to be concerned whether the intermediary legitimately represents the organizational client.

Nevertheless, as one Colorado district court said, "Once employed by a corporation, a lawyer owes his allegiance to the entity and not to the stockholder, director, officer, employee, representative or other person connected with the entity." *In re King Resources Co.*, 20 B.R. 191 (D.Col. 1982).

■ In the bankruptcy context, sorting out the conflict of interest issues which can result when a lawyer represents a corporate debtor-in-possession becomes all the more difficult. A chapter 11 debtor-in-possession is not just another business organization, seeking to advance its own interests and those of its constituents. A chapter 11 debtor-in-possession, like a trustee, has been entrusted with fiduciary responsibility to administer the estate and to act for the benefit of the creditors. *In re Kendavis Indus. Int'l, Inc.*, 91 B.R. 742, 757 (Bankr.N.D.Tex.1988) (quoting *In re Leisure Dynamics*, 32 B.R. 753, 756 (D.Minn. 1983) for the proposition that a "debtor in possession has fiduciary responsibilities imposed upon it in dealing with property of the estate"). Although, in the ideal situation, matters which best serve the interests of a reorganizing debtor's principals will also best serve the interests of the estate and the creditors, such is not necessarily and inevitably the case.

A First Circuit case illustrates just this point—that the interests of a reorganizing debtor's principals are not always consonant with the interests of the estate and the creditors. *See Parker v. Frazier (In re Freedom Solar Center, Inc.)*, 776 F.2d 14, 16 (1st Cir.1985). In that chapter 7 case, an attorney attempted to represent both the debtor and the debtor's sole shareholder. The court of appeals disqualified the attorney because the interests of the debtor and the shareholder were adverse in at least two major respects: (1) the shareholder was interested in delaying the turnover of the debtor's assets because he wanted to use them for his own benefit in making other business arrangements, while the debtor's interest was in cooperating with the trustee to bring the chapter 7 case to a swift resolution; and (2) the shareholder's

interest was in purchasing the debtor's assets at the lowest possible price, while the debtor's interest was in selling the assets at the highest price possible. *Id.* at 17.

Bankruptcy Judge Harold Abramson, in the Northern District of Texas, also addressed the conflict of interest problem which arises when the attorneys for the debtor-in-possession is charged with representing the best interests of the debtor's principals, to the detriment of the estate and the creditors. *In re Kendavis,* 91 B.R. at 748–79. There, the attorneys' behavior led to excesses, delay of the case, and unproductive, unnecessary litigation. *Id.* at 749. Among other things, the attorneys "vigorously opposed the Committee's Plan of reorganization, despite the fact that their objections could benefit only the interest holders" of the debtor-in-possession, and not the estate. *Id.* at 750. At the same time, the plans proposed by the attorneys for the debtor-in-possession stood to benefit the debtor's principals primarily, to the detriment of the creditors. *Id.* at 749. The court held that the activities of the attorneys, during the time they were appointed by the court to render service to the debtor-in-possession, best served the principals of the debtor, rather than the debtor-in-possession, its estate, or its creditors. *Id.* at 751. As a result, the court found a serious conflict of interest. *Id.* Although the court acknowledged that it had the authority to disallow all fees to the offending law firm, it decided instead to allow the firm 50% of the fees they had requested. *Id.* at 762; *see also In re Chapel Gate Apts., Ltd.* 64 B.R. at 576 (citing several cases for the same proposition, including *In re Jones,* 665 F.2d 60 (5th Cir.1982) and *In re Orbit Liquor Store,* 439 F.2d 1351, 1354 (5th Cir.1971)).

Certainly the facts of this case *suggest* that Gresham, Davis' true client was the officers and directors of OPA. They certainly stood to gain the most from the plan they proposed, and stood to lose the most from the conversion of the case. A court could no doubt find on these facts, under the authorities discussed above, that Gresham, Davis had a conflict of interest which now bars any entitlement to fees. *Ken-*

*davis, supra.* This court, however, is reluctant to make such a finding absent more compelling facts than those presented here. A finding of conflict of interest, while no doubt the responsibility of any judge where the facts so warrant (a responsibility which should not be shirked, no matter how painful its exercise), should nonetheless not be lightly made. There is an inevitable *in terrorem* effect that accompanies any such ruling, which just as inevitably discourages competent and honest counsel from accepting such representations in the first place, or from diligently discharging their duties for fear of reprisals later in the case. Such a ruling should be reserved for cases where the facts developed at trial establish the conflict of interest with more clarity and more certainty than do the facts here.

Thus, while this court agrees with the precedent established in *Liberty Trust* and *Kendavis,* it does not find that the facts of this case bring it within the ambit of those decisions with sufficient clarity to warrant their application here. There are other, more precise, tests available to a court to deal with situations such as that presented by the facts of this case. We turn to the third objection of the trustee for the application of one of those more precise tests.

(3) *Should Gresham, Davis be compensated, from the estate, for fighting the efforts to reconvert the case to a Chapter 7?*

Section 330 applies to all bankruptcy cases, and does not distinguish between chapter 7 and chapter 11 cases. "In general, on an application for compensation from the estate, there is no difference between the [fee payment] standards to be applied in reorganization and liquidation cases." *In re Moore,* 57 B.R. 270, 271 (Bankr.W.D.Okla.1986). Under both chapters, reasonable fees may be awarded only for those services which are actual, necessary, and/or beneficial to the estate. *Id.* In fact, many of the cases which have denied compensation for services that benefit the debtor but not the estate have been Chapter 11 cases. *In re Reed,* 890 F.2d at 106 (citing several cases, including *In re*

*Chapel Gate Apts.*, 64 B.R. 569, 576 (Bankr.N.D.Tex.1986)). A debtor-in-possession's attorney cannot be compensated for representing the interests of the debtor or the debtor's directors, officers, and/or shareholders in a manner which is adverse to, or does not benefit, the estate or the creditors. *In re Reed*, 890 F.2d 104, 105 (8th Cir.1989).[2]

As the trustee pointed out in his objection to the Gresham, Davis fee application, there is precedent within the Western District of Texas for disallowing attorney's fees when the services of the debtor in possession's attorney benefit only the debtor, and not the estate. Ironically, it was then-Judge R. Glen Ayers (who was chapter 7 debtor's counsel in this case) who ruled that the conduct of a debtor-in-possession's attorneys in assisting debtor's owner and manager in his attempts to remain in control of the debtor were not compensable from the estate. *In re Liberty Trust*, 92 B.R. 706, 707 (Bankr.W.D.Tex. 1988). Because *Liberty Trust* was a case of first impression in the Western District of Texas, Judge Ayers did not deny all compensation to the attorneys. *Id.* The case at bar, however, comes three years after the precedent established by *Liberty Trust*.

Though no Texas cases were found involving fee applications filed by a debtor in possession's attorney seeking compensation for fighting conversion to a chapter 7, two cases from other jurisdictions discuss the problem. In *In re Rosen*, a chapter 13 case was converted to chapter 7, the court held that the "efforts of the attorney for the debtor in the chapter 13 case resulted in little benefit to the creditors so as to entitle the attorney for the debtor to payment as administrative expenses for all of the services rendered by him in the chapter 13 case." 25 B.R. 81, 86 (Bankr.D.S.C. 1982). The case suggests an unnecessarily harsh rule: if an attorney who otherwise aids in the administration of a chapter 13 or chapter 11 case but then, post-conversion, seeks compensation from the chapter 7 estate, his services will only be compensable to the extent that they were necessary or beneficial to the *chapter 7* estate. We reject such a rule here.

A much closer case, *In re Citrone Develop. Corp.*, originated with the filing of an involuntary petition in chapter 7. 106 B.R. 359, 360 (Bankr.S.D.N.Y.1989). About four months later, the debtor filed a voluntary chapter 11 petition. On facts remarkably similar to those in the case at bar, the

> debtor first proposed to form a new corporation and sell its shopping center to the new corporation. The creditors, who were offered stock in the proposed corporation, successfully objected to the proposal. The debtor then proposed to assign its sole asset to an insider corporation controlled by the debtor's principal in exchange for which the insider corporation would assume the debtor's mortgage. Once again the creditors successfully objected to the debtor's motion to accomplish this proposal.

**2.** The legislative history of the disinterestedness requirement in § 330(a) provides further insights relevant to the case at bar. *See In re Kendavis Indus. Int'l, Inc.*, 91 B.R. 742, 747–48 (Bankr.N.D.Tex.1988). Apparently one purpose of the requirement was to " 'guard against a recurrence of the "sordid chapters" in the history of fees in corporate reorganizations.' " *Id.* at 747 (citing S.Rep. No. 989, 96th Cong., 2d Sess 40, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5826; and quoting *Dickinson Indust. Site, Inc. v. Cowan*, 309 U.S. 382, 288, 60 S.Ct. 595, 599, 84 L.Ed. 819 (1940)). Concern about these "sordid chapters" was also implicit in a statement made many years before by Justice William O. Douglas:

> " 'The record of corporate reorganization … is not pleasant. It shows the absolute control exercised over reorganizations by the inside few; it shows the financial well-being of investors and the public sacrificed to the insiders' desire for *protection and for profit*. … It shows that these delays, these futile prolongations of the agony of reorganization were frequently due to deliberate sabotage by a group which had something to gain and was unwilling to compromise. … The record also shows, with overwhelming proof, that plans of reorganization were frequently dictated by a single interest—by a closely knit inside group; primarily in the interests of that group and of dubious wisdom so far as interest outside the inner circle were concerned.' "
> *Id.* at 747–48 n. 1 (quoting from H.R.Rep. No. 1409, 75th Cong., 1st Sess., at 38 (1937)).

*Id.* Approximately nine months afterward, the case was reconverted to chapter 7. The debtor's attorney then sought compensation for his services and expenses, which had included attending several creditors' meetings and appearing in court in connection with proposals to sell or assign the debtor's sole asset. The court found that during the Chapter 11 period, the debtor-in-possession "did nothing tangible to benefit any of its creditors. The proposed sale of the debtor's corporation to a corporation controlled by its principal would not have advanced the interests of the creditors.... [T]here was no forward movement towards any reorganization contemplated under Chapter 11 which might have a reasonable prospect of success." *Id.* In dicta, the court observed that "[h]ad an order for relief been entered in connection with the original involuntary petition ..., the creditors would have been spared two years of delay in the enforcement of their rights." *Id.*

As here, the applicant in *Citrone Development* had spent most of his efforts opposing the motion for reconversion of the case to chapter 7 and drafting a plan which was never filed. *Id.* In holding that the fee application should be denied, the court said:

> Apart from the listing of telephone conversations, the debtor's attorney attended approximately eight creditor's meetings pursuant to 11 U.S.C. § 341, attended hearings involving his two unsuccessful motions to sell or assign the debtor's sole asset, attended a creditor's motion for relief from the automatic stay, attended the United States trustee's motion to convert the Chapter 11 case, prepared a fee application and a motion to be relieved as counsel for the debtor. In addition to preparing the Chapter 11 petition, he spent time preparing and amending a plan of reorganization which was never filed. In reviewing these activities in light of the twelve so-called Johnson factors delineated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), it *cannot be determined to what extent the debtor's former counsel*

> *performed legal services which benefitted the estate.*

*Id.*

The principle significance of *Liberty Trust* and *Citrone Development* for our facts is not so much whether the attorneys in those cases had a conflict of interest, but that the services they rendered did not benefit the estate. The distinction may seem slight, but it is nonetheless one with a difference. The focus is turned away from who is represented and toward who is benefitted; whether the services were actual and necessary for the pursuit of a legitimate reorganization within the contemplation of the Bankruptcy Code. *See In re Office Products of America, Inc.,* 136 B.R. 964 (Bankr.W.D.Tex.1992) (decision and order on fee application of chapter 7 debtor's counsel). In our earlier discussion of the trustee's conflict of interest objection, we observed that zealous representation of the debtor in its pursuit of reorganization over the objections of a significant body of creditors might chill a debtor's ever trying to employ § 1129(b) (the cramdown provisions) if in the process, such a pursuit were deemed to evidence a conflict of interest. Here, on the other hand, we evaluate whether the proposed plan would have met even the standards of § 1129(a), which is the *sine qua non* for confirmation of *any* plan, regardless of creditor opposition. *See* 11 U.S.C. § 1129(a) (court may confirm a plan *only if* all requirements of that section are met). This section spells out the minimums for a plan that represents a legitimate effort at reorganization, that operates in the best interests of the estate and its creditors. If it does not, then we are right to ask whether any benefit has been conferred on the estate in pursuing the plan in the first place, *if* it is clear from the context of the case that the debtor and its counsel knew or should have known from the outset that the plan could *not* satisfy the requisites of § 1129(a).

The fee detail does indeed suggest that there was a point in time when the debtor knew or should have known that pursuit of this plan flew in the face of § 1129(a), yet the debtor pushed on anyway. At that

point, the services of counsel were no longer "necessary," as the debtor was no longer at that point discharging its duties as fiduciary of the estate, was no longer pursuing legitimate reorganization. Instead, the fight against conversion and the insistence on pursuing the plan served interests other than those of the estate, namely maintaining then-current management's control over the enterprise. *See Liberty Trust, supra; Citrone Development, supra.* Counsel could no longer expect to be compensated for its services at this point under the standards set by § 330(a), for its services were no longer "actual, necessary" services associated with representing the debtor-in-possession in the discharge of its fiduciary duties to the estate and its beneficiaries, the creditors.

The court has evaluated the fee detail of Gresham, Davis' fee application, and determined that, from about July 10th, the firm's work included $10,315.00 in fees for work in helping management craft the plan the debtor used to oppose reconversion of the case, a plan which this court concluded did not serve the best interests of the estate and its creditors, but served primarily to maintain then-current management in control of the enterprise, at significant risk to the creditor body. These fees are disallowed.

(4) *Did Gresham, Davis needlessly duplicate services previously rendered by Cox & Smith, such that Gresham, Davis should not be compensated, from the estate, for such services?*

When the case was converted to a Chapter 11, much of the work previously done by Cox & Smith needed to be updated and revised. While Gresham, Davis probably should not be compensated for work done in fighting the reconversion to a Chapter 7, equity probably dictates that the firm should be reasonably compensated for work which it did in connection with, or necessary to, the administration of the Chapter 11 case. These services are compensable.

## CONCLUSION

In light of the foregoing discussion, the court elects not to deny Gresham, Davis all its fees, pursuant to § 328(c) (i.e., for representing an interest adverse to the estate or its creditors). Similarly, the court declines to hold that Gresham, Davis was not "disinterested" within the meaning of §§ 327, 328, and 330 (which incorporates the disinterestedness requirement of § 327).

On the other hand, the court would not have reconverted the case to Chapter 7 unless it had determined, on the facts, that such a reconversion was in the best interests of the estate and the creditors. Gresham, Davis' efforts in fighting the reconversion appear to have served the interests of the debtor-in-possession's principals, but not those of the debtor-in-possession itself. To the contrary, those services worked to the detriment of the estate and its creditors. That being so, Gresham, Davis should not be compensated by the estate for fighting the reconversion, as those services do not qualify as "necessary" within the meaning of § 330(a).

As for whether Gresham, Davis should be compensated for those services which aided the administration of the Chapter 11 estate, given that the conversion to Chapter 11 was a legitimate exercise of the debtor's absolute right conferred by § 706, equity dictates that Gresham, Davis should be compensated for aiding the debtor in possession in doing what the Code requires of a debtor-in-possession. In addition, the firm is entitled to be compensated for its work in aiding the debtor-in-possession to discharge its duties in administering the estate.

An order has been entered which adjusts the fees requested in accordance with this decision.