In the Matter of Frederick Lane WARREN, Debtor.

Mary S. RAINEY and Boyce T. Rainey, Plaintiffs,

v.

Frederick Lane WARREN, Defendant.

Bankruptcy No. 80–00150.
Adv. No. 80–0057.

United States Bankruptcy Court,
M. D. Georgia,
Macon Division.

Sept. 22, 1980.

James B. McLaughlin, Jr., Macon, Ga., for plaintiffs.

A. Dale Albritton, Macon, Ga., for defendant.

## MEMORANDUM DECISION ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

### STATEMENT OF THE CASE

HENRY D. EVANS, Bankruptcy Judge.

The debtor, Frederick Lane Warren, filed his voluntary petition in bankruptcy on February 8, 1980. A trustee was appointed, the time for the first meeting of creditors was set and April 14, 1980 was fixed as the last day for filing objections to the discharge of the debtor or complaints to determine the dischargeability of any debts.

On April 14, 1980 Mary S. Rainey and Boyce T. Rainey, plaintiffs, filed their complaint to determine the dischargeability of a debt ostensibly owed them by the defendant. They based their action on 11 U.S.C. § 523(a)(2) and (6). Within the time prescribed by law, the defendant answered the complaint generally denying the necessary elements of the complaint. The defendant also filed a motion to dismiss plaintiffs' complaint, which was denied. The matter came on regularly to be heard on the 11th day of September 1980, all parties present and represented by counsel.

After consideration of the evidence, the Court makes the following:

## FINDINGS OF FACT

Sometime just prior to June of 1973 Mary S. Rainey and Boyce T. Rainey, plaintiffs, decided to purchase a pool. The motivation for doing so was a particular physical ailment of Mrs. Rainey which required therapy particularly provided by swimming. In their search for a pool, plaintiffs contacted Frederick Lane Warren, defendant, a major stockholder and president of Pool Specialists, Inc.

Upon contact by the plaintiffs, the defendant sold them a Blue Dolphin pool. The Blue Dolphin pool was warranted by the manufacturer (a copy of which was provided the plaintiffs upon completion of the sale) as follows:

"The Blue Dolphin pool is the product of many years of research and testing. We at Blue Dolphin believe that this pool is the finest in the industry. As a result, Blue Dolphin Pools, Inc. warrants the pool structure to be free from defects in material and workmanship under normal use and service for 20 years and 20 years on the vinyl liner. Blue Dolphin's obligation under this warranty being limited to making good at its place of business any part or parts thereof which shall, within 20 years, on a pro rata basis after sale to the original purchaser, be returned to it, with transportation charges prepaid, and with its examination shall disclose to its satisfaction to have been thus defective. This warranty being expressly in lieu of all other warranties, expressed or implied, and Blue Dolphin Pools, Inc. neither assumes nor authorizes any other person to assume any other liability in connection with the sale of a Blue Dolphin pool.

This warranty shall not apply to any Blue Dolphin pool which shall have been repaired or altered by anyone not authorized by Blue Dolphin Pools, Inc. in any way so as in the judgement of the company to affect its stability and reliability, nor which has been subject to misuse, negligence, or accident."

As stated in the warranty, the plaintiffs were told by the defendant that the pool was guaranteed for 20 years. The purchase was made in June 1973.

In 1976, the defendant left Pool Specialists, Inc. and began working for Blue Dolphin Pools of Macon, a completely separate company from Blue Dolphin Pools, Inc. (of Tallahassee), the manufacturer of the pool bought by the plaintiffs.

In March 1978, the pool sold to plaintiffs developed a crack in its vinyl liner. The plaintiffs contacted the defendant and demanded that he repair the pool. He advised them that for him to do so would void the warranty given by Blue Dolphin Pools, Inc. and told them that the vinyl liner of the pool should be removed so that it could be sent to the manufacturer for repair pursuant to the warranty. The defendant also paid a scuba diver to assess the damage to the plaintiffs' pool. The plaintiffs refused to take the action advised and had the pool repaired by another company.

## CONCLUSIONS OF LAW

■ The plaintiffs are claiming that the damage done to their pool is a malicious injury to their property occasioned by the defendant or in the alternative that the defendant obtained money from them by the artifice of false representations. The pertinent parts of the Code considered are:

"§ 523. Exceptions to discharge.

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity; . . ."

As to willful and malicious injury by the debtor to another entity or the property of another entity, the injury must have been the product of a wrongful act done intentionally, without just cause or excuse in order to fit within the statute. 3 *Collier on*

*Bankruptcy* ¶ 523.16 (15th ed.). The intent can no longer be the "reckless disregard" type intent sanctioned by *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), but must be a specific intent. 3 *Bkr.L.Ed.* § 22:35.

■ The necessary intentional nature of the injury to plaintiff has not been shown. Hence, the part of the complaint based on § 523(a)(6) is unfounded.

■ As to the portion of the complaint based on fraud and false representation, the plaintiffs have not carried their burden of proof in establishing all the necessary elements of a prima facie case under § 523(a)(2)(A). As to fraud, the elements necessary for the plaintiffs to establish are:

1. a false representation made by the debtor;
2. scienter (or knowledge of the falsity);
3. an intention to induce the plaintiff to act or refrain from acting;
4. justifiable reliance by the injured party; and
5. damage as a proximate result to the plaintiff.

See *Shaw v. Cook County Federal, etc. Ass'n*, 139 Ga.App. 419, 228 S.E.2d 326 (1976). In addition, the fraud must involve moral turpitude and not merely be fraud implied by law. *In re Taylor*, 514 F.2d 1370 (9th Cir. 1975).

Scienter, either by way of knowledge of the falsity of statements made or by way of a careless disregard for the truth, simply was not shown. It was also not shown that any bad faith or moral turpitude entered into the negotiations of the parties. The ground of fraud does not survive.

■ As to the ground concerning false pretenses as distinguished from fraud, the burden is on the plaintiffs to show that the false representations were knowingly and fraudulently made, and relied on by the plaintiffs to their detriment. 3 *Collier on Bankruptcy* ¶ 523.08 (15th ed.). The plaintiffs simply did not show that any representations were made which the defendant knew to be false and used to deceive. Likewise this ground of the complaint fails.

■ It appears to the Court from the Findings of Fact that the action against the defendant in the case sub judice placed an unnecessary burden on the defendant in preparing a defense and as such should not be charged to him or his estate. It is therefore the opinion of the Court that the costs of this proceeding should be taxed to the plaintiffs herein, and the defendant should be allowed the sum of $250.00 as attorney's fees resulting from his defense.