In re **LEDERMAN ENTERPRISES, INC., Debtor.**

**RUBNER & KUTNER, P.C.,** Appellant,

v.

**UNITED STATES TRUSTEE,** et al., Appellees.

Civ. A. No. 91–K–1788.
Bankruptcy No. 90 13301 CEM.

United States District Court,
D. Colorado.

Aug. 7, 1992.

Lee M. Kutner, Rubner & Kutner, Denver, Colo., for Rubner & Kutner.

Leo M. Weiss, Denver, Colo., trustee.

Andrew John Petrie, Kirkland & Ellis, Denver, Colo., for Bankers Trust.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

The issue in this bankruptcy appeal is whether the bankruptcy court erred in reducing the fees and costs requested by debtor's counsel, Rubner & Kutner, P.C. ("R & K"), by approximately sixty-six percent. R & K argues: (1) the court ignored the proper legal standards in considering the fee application, (2) the court abused its discretion in mandating a twenty-percent, across-the-board reduction for counsel's inadequate application, and (3) the court abused its discretion in reducing the fees based on its earlier finding that the debtor's second Chapter 11 petition was filed in bad faith. I affirm in part and reverse in part.

### I. *Facts.*

The debtor, Lederman Enterprises, Inc., filed a petition for Chapter 11 reorganization on August 13, 1990. Lederman Enterprises' primary business was the operation of the Regency Inn, a large hotel located in Denver, Colorado along the I-25 corridor. Shortly thereafter, Lederman Enterprises requested court permission to employ R & K as its attorney. That motion was granted.

On September 5, 1990, Lederman Enterprises' primary secured creditor, Bankers Trust Company, moved to dismiss the petition or to convert the case to a Chapter 7 liquidation. Bankers Trust argued that Lederman Enterprises' Chapter 11 filing was a bad-faith attempt to escape the consequences of its default under an earlier reorganization plan. Under that plan, if Lederman Enterprises failed to make certain loan payments to Bankers Trust or maintain an adequate net operating income, Bankers Trust would take title to the hotel, which was held in escrow during this time. Bankers Trust suggested that Lederman Enterprises' second bankruptcy filing was improper unless for the purpose of liquidation, not reorganization. (The United States Trustee filed a similar motion on February 26, 1991.) Bankers Trust's motion to dismiss was set for hearing on March 13 and 14, 1991, and Lederman Enterprises was ordered to file a disclosure statement and plan by November 27, 1991.

Lederman Enterprises filed its plan and disclosure statement in compliance with the court's order. Both Bankers Trust and the United States Trustee objected to the adequacy of the disclosure statement. After a hearing on the objections, Lederman Enterprises amended the disclosure statement, and it was approved on January 24, 1991. On February 5, 1991, R & K made its first application for allowance of attorney fees. Bankers Trust and the United States Trustee objected to that application.

After the hearing on the motions to dismiss or to convert Lederman Enterprises' case, on March 19, 1991 the bankruptcy court entered an order converting the case from Chapter 11 to Chapter 7. Although it held that successive bankruptcy filings are not prohibited as a matter of law, the court found that Lederman Enterprises had not filed its second petition in good faith because it sought only to postpone Bankers Trust from taking title to the hotel property. In addition, the court found that the plan proposed by Lederman Enterprises did not meet the requirements for a cram down under § 1129 of the Code, which required Bankers Trust to receive certain cash payments equal to the value of its claim. The court then entered an order deferring consideration of R & K's first fee application,

ordering the firm to file a final, consolidated application, and permitting the Chapter 7 trustee and other parties to respond.

On April 18, 1991, R & K filed its final application for attorney fees, requesting a total of $54,383.25 in fees and costs. Bankers Trust and the United States Trustee again objected, as did the Chapter 7 trustee. After a hearing on the application, the bankruptcy court permitted R & K $19,-521.05 in fees and $2,087.45 costs. First, the court reduced the claimed fees by a flat twenty percent to account for R & K's inadequate fee application. The court charged the firm with improperly "lumping" charges, making it impossible to determine "what services were allocated to what billing category." (R. Doc. 286 at 8.) Second, the court rejected R & K's fee request in several billing categories. It denied in totality fees claimed for the disclosure and plan confirmation process, for depositions and other matters in connection with Bankers Trust, and for a lawsuit against the wife of Lederman Enterprises' principal. Costs and expenses related to those categories were likewise denied. R & K now appeals.

## II. *Issues.*

### A. Appropriate Legal Standards.

■ R & K's first argument is that the court erred in ignoring the proper legal standards for review of a fee application under 11 U.S.C. § 330. The firm charges that the bankruptcy court recited the proper standards, but in fact punished it for the debtor's bad faith in commencing a second bankruptcy case. I disagree.

The court's order, as R & K acknowledges, correctly states that a "lodestar" analysis, tempered by the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), guides the court's consideration of attorney fee awards. *See Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989). In the bankruptcy context, however, whether the attorney's services benefitted the estate is a threshold concern. *See* 11 U.S.C. § 330(a) (permitting the award of "actual, necessary" fees and expenses); *In re Ryan*, 82 B.R. 929, 932

(N.D.Ill.1987). Application of the *Johnson* factors and lodestar analysis is dependent upon an initial showing that the attorney's services were beneficial to the estate. As one commentator notes, "The tangible benefit conferred on the estate and its creditors is clearly a proper measure of the appropriate compensation. Indeed, .. '[t]he *sine qua non* of the allowance is the benefit the bankrupt's estate and its creditors have derived from the services rendered.'" 2 *Collier on Bankruptcy*, ¶ 330.-05[2][d] at 330–50 (L. King 15th ed. 1992) (quoting Herzog, *Fees and Allowances in Bankruptcy*, 36 Conn.B.J. 374 (1962)); *see also In re Reed*, 890 F.2d 104, 105–06 (8th Cir.1989); *Yermakov v. Fitzsimmons (In re Yermakov)*, 718 F.2d 1465, 1472 (9th Cir.1983); *In re Stoecker*, 128 B.R. 205, 210 (Bankr.N.D.Ill.1991). Accordingly, the court did not err in addressing, at the outset, whether R & K's services were of benefit to the estate.

### B. Reduction for Inadequate Fee Application.

■ R & K next challenges the court's imposition of a twenty-percent reduction to account for inadequacies in the form of the firm's fee application. It argues that the court was overly critical of the format of the application and the information provided was more than adequate under the standards provided in Bankruptcy Rule 2016. That rule requires the applicant to set forth "a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Bankr.R. 2016(a). R & K's argument is well-taken.

R & K's final fee application consists of approximately twenty substantive pages. It includes a general description of the case history and the amounts requested for broad categories of services. In separate exhibits, the firm identifies all parties referenced in the billing statements and describes their relation to the case. In addition, there is a five-page, single-spaced summary of billings. This summary discusses in detail the specific activities of counsel in connection with each category of

service billed and includes an itemization, by attorney or paralegal, of the hours billed. Finally, the firm has attached billing statements for the period. These statements identify in chronological order the attorney or paralegal who performed each task charged to the matter, a fairly specific description of the task, the amount of time charged and the billing rate.

In light of the detail provided in the application, it is hard to see how R & K could have provided more information. The bankruptcy court's central criticism of the application was that there was no information correlating each specific entry in the billing statements to the general categories of services described in the billing summary. By reading the description of tasks for each entry in the billing statements and referring to the list of parties referenced, however, it is fairly easy to identify the billing category to which each entry was assigned in the summary. Any ambiguities were minor and could have been resolved in the hearing on the application. *Compare Quiat v. Berger (In re Vann)*, 136 B.R. 863, 873 (D.Colo.1992) (structure of application made it nearly impossible to determine nature of work performed or correlation between hours billed and tasks accomplished).

The bankruptcy court clearly erred in finding that R & K's fee application was inadequate and abused its discretion in imposing a twenty-percent, across-the-board reduction. Therefore, I reverse the court's order on this issue.

**C. Reduction for Services Not Benefitting the Estate.**

■ Finally, R & K contends that the court arbitrarily penalized it for the debtor's actions in filing a successive petition. In assessing the benefit provided by R & K's services, the court took into consideration its earlier finding that the petition was filed in bad faith because it was intended simply to forestall Bankers Trust's legitimate remedies under the first reorganization plan. R & K argues that Lederman Enterprises' actions toward a second reorganization were reasonable at the time

they were undertaken and that the fees incurred in this process should have been allowed.

Although the fact that a Chapter 11 case does not achieve a successful reorganization "is not a *per se* reason for denying the debtor's counsel any compensation ... this fact must be taken into consideration in ascertaining the value of the legal services to the estate." *In re Greene*, 138 B.R. 403, 408 (Bankr.S.D.N.Y.1992). Many courts have disallowed fees for reorganization-related services that later proved futile or unrealistic. *See, e.g., Id.* at 409; *In re Office Prods. of Am., Inc.*, 136 B.R. 983, 990–91 (Bankr.W.D.Tex.1992); *In re Latham*, 131 B.R. 238, 238–39 (Bankr.S.D.Fla. 1991); *In re Muir Training Technologies, Inc.*, 120 B.R. 154 (Bankr.S.D.Cal.1990). Thus, "Chapter 11 cases which lack viable chances of reorganization may place the fees of counsel at risk." *In re Offield*, 128 B.R. 548, 550 (Bankr.W.D.Mo.1991); *see also Miner v. Westergren, Hauptman, O'Brien, Wolfe & Hadley, P.C. (In re King)*, 96 B.R. 206, 208 (W.D.Mo.1989).

Here, the court did not arbitrarily deny R & K its fees because the reorganization was unsuccessful. The court examined the fee application *in toto* to determine which services were beneficial to the estate, now in liquidation, and which were not. Those services which arguably had some utility in the liquidation were allowed. The bankruptcy court did not err in rejecting fees for services in connection with the plan and disclosure process. At some point, R & K should have known that Lederman Enterprises' attempted reorganization was unrealistic and any services rendered in connection with that process would not serve the interests of the estate. *See In re Office Prods. of Am., Inc.*, 136 B.R. at 990–91. Furthermore, the company's failure to propose a plan that met the standards of § 1129(a) lends credence to the court's conclusion that a reorganization attempt was ill-advised. *See id.* at 990. Accordingly, the court did not abuse its discretion in rejecting certain of R & K's fees in connection with reorganization that had no benefit to the liquidation.

### III. *Conclusion.*

The bankruptcy court did not abuse its discretion in denying R & K fees for reorganization-related services that did not benefit the estate. The court did clearly err in finding the information provided in R & K's fee application was insufficient and in reducing all fees by twenty percent. Consequently, the bankruptcy court's decision is affirmed in part and reversed in part, and the cause is remanded for a recalculation of the fee award.