**In re Bruce and Kimberly KINGSBURY, Debtors,**

**Bankruptcy No. 89–10265.**

United States Bankruptcy Court,
D. Maine.

Oct. 19, 1992.

Elizabeth A. Hogland, Portland, Me., for debtors.

Kim M. Vandermeulen, Vandermeulen, Goldman & Allen, Augusta, Me., for claimants Barbara and Duane Lord.

Dennis C. Bezanson, South Portland, Me., trustee.

## MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Bankruptcy Judge.

Pending is debtors' counsel's application for compensation and reimbursement of expenses in this Chapter 7 proceeding.[1] The trustee opposes the application to the extent that it includes compensation for defending two dischargeability complaints.[2] Having considered argument and briefs, I conclude that the trustee's objection must be sustained.[3]

## BACKGROUND

The Kingsburys were dairy farmers who managed a herd comprised of cattle they owned and cattle they leased. They filed a petition for relief under Chapter 7 of the Bankruptcy Code on June 30, 1989. Counsel ably assisted them throughout. Contested compensation comprehends defense of two § 523 dischargeability actions, each involving commercial contracts for sale and/or lease of cattle. *Valentine v. Kingsbury* was settled for a small sum. In *Lord v. Kingsbury*, plaintiffs' prayer for a determination of non-dischargeability went unanswered.

---

1. Counsel denominated her pleading an "interim" application. Given that the trustee's final account and application for compensation have been filed and that counsel is no longer actively representing the debtors, I will treat it as her final application.

2. The actions were brought by Barbara C. Lord and Duane R. Lord, *Lord v. Kingsbury*, Adv. Proc. No. 89–1061; and by Robert L. Valentine, *Valentine v. Kingsbury*, Adv.Proc. No. 89–1060. Each has resolved. Counsel seeks compensation and reimbursement of $9,896.34 for work attributable to defending the dischargeability

complaints. The balance of the application is both unchallenged and unremarkable. Thus, I have observed my independent duty to scrutinize the entire application for reasonableness, *In re Casco Bay Lines, Inc.,* 25 B.R. 747 (Bankr. 1st Cir.1982); *In re Saturley,* 131 B.R. 509, 516 (Bankr.D.Me.1991). There is no need to discuss its unopposed portions here.

3. There are no factual issues in dispute. This memorandum sets forth conclusions of law in accordance with the dictates of F.R.Bankr.P. 7052 and 9014.

## DISCUSSION

### 1. Introduction.

Today's decision is not written on a blank slate. Nearly twenty years ago, the bankruptcy court for this district held that the Bankruptcy Act provided that a debtor's counsel would be compensated by the estate for defending dischargeability complaints—an acknowledged minority position at that time. *In re Gray*, 7 C.B.C. 571 (Bankr.D.Me.1975).[4] Five years ago, *In re Deihl*, 80 B.R. 1 (Bankr.D.Me.1987), hewed closely to *Gray* and again held that such services were compensable.

I am persuaded, however, that the Bankruptcy Reform Act of 1978[5] codified a different rule. Although the Bankruptcy Code does not preclude compensation for all services rendered by debtors' counsel in every dischargeability action, the Code does not authorize administrative payment of routine fees incurred in *defending garden-variety dischargeability actions*. The services at issue here are run-of-the-mill, and are not intertwined with other, compensable services. Accordingly, I must disallow administrative compensation for the Kingsburys' dischargeability defenses.

### 2. The Bankruptcy Act: Fees in the *Gray* Area.

*In re Gray* was decided under § 64(a)(1) of the Bankruptcy Act.[6] The opinion sets

forth the court's view of appropriate bankruptcy policy in light of the language of the Act. Thus, *Gray* is a creature of pre-Code conditions, statutory and procedural.

For most of the Act's reign, dischargeability practice differed sharply from the practice we know under the Code. Until the 1970's, determining the impact of a discharge order on specific debts was not the responsibility of the bankruptcy court. *Gray*, 7 C.B.C. at 577. *See Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Creditors prosecuted actions to establish exceptions to the bankruptcy discharge outside the bankruptcy court. *Gray*, 7 C.B.C. at 577.[7]

The Act left compensability of defending dischargeability actions unclear. Section 64(a)(1) of the Act, Code § 330's predecessor, provided that priority claims against the estate included, "(1) the costs and expenses of administration, including ... one reasonable attorney's fee, for the professional services actually rendered ... to the bankrupt...."

*Gray* articulated a rule approving compensation to debtor's counsel for services rendered in carrying out the provisions of the Bankruptcy Act which did not hinder the administration of the case. 7 C.B.C. at 580, 583.[8] The court observed: "The 'pro-

---

**4.** *Gray* was a case of first impression in the district. 7 C.B.C. at 577.

**5.** The Bankruptcy Reform Act of 1978, as amended, is set forth at 11 U.S.C. § 101, *et seq.*, and is referred to throughout this memorandum as the "Bankruptcy Code" or, simply, the "Code." All references to statutory sections, unless otherwise noted, are to provisions of the Code.

**6.** 11 U.S.C. § 104(a)(1) (1975) (repealed 1978).

**7.** *See generally* Vern Countryman, *The New Dischargeability Law*, 45 Am.Bankr.L.J. 1, 3 (1971) (hereafter "Countryman"). Congress responded to criticisms about the fairness of state court practice and procedure for some dischargeability matters by bringing them into the bankruptcy court. Pub.L. No. 91–467, 84 Stat. 990 (1970) amended the Bankruptcy Act to require that actions to determine dischargeability under §§ 17(a)(2) (false pretenses, false representations, false financial statements and willful and

malicious conversion), 17(a)(4) (fiduciary fraud or defalcation) and 17(a)(8) (willful and malicious injury to person or property) of the Act be brought in the bankruptcy court. Countryman at 25. *See In re Gray*, 7 C.B.C. at 583. The Bankruptcy Code continued that rule, and requires that complaints seeking a determination of non-dischargeability under §§ 523(a)(2) (fraud), 523(a)(4) (fiduciary defalcation), and 523(a)(6) (willful and malicious injury) be initiated within 60 days of the § 341 meeting of creditors (Chapter 7) or by a bar date set by the court (Chapter 13) and that they be prosecuted in bankruptcy court. *See* § 523(c); F.R.Bankr.P. 4007. As to other discharge exceptions, bankruptcy courts share jurisdiction with other fora. *See* L. King, 3 *Collier on Bankruptcy* ¶ 523.12 (15th ed. 1992).

**8.** *Gray* analyzed the language of the Act and the Supreme Court's opinion in *Conrad, Rubin & Lesser v. Pender*, 289 U.S. 472, 53 S.Ct. 703, 77 L.Ed. 1327 (1933). In *Pender*, the Supreme Court observed that compensation would be al-

visions of the Act' which are of paramount importance in contemporary consumer or non-business bankruptcy proceedings are those which provide for a 'fresh start' for deserving debtors by means of a decree of discharge relieving them of unmanageable indebtedness." 7 C.B.C. at 583 (citation omitted). Concluding that the Act's language did not foreclose compensation for dischargeability defenses, *Gray* considered the impact of spurious dischargeability actions on a debtor's "fresh start," in light of the meaningful possibility that default judgments might be entered against debtors unable to afford to retain counsel. *Id.* at 583–84. "Economy of administration.... was never intended to entrench overburdened debtors in economic peonage by depriving them of necessary legal representation in pursuit of the only meaningful legal remedy available to them." *Id.* at 584.

*Gray* viewed the legislatively-unresolved issue as a policy issue, appropriately resolved by the courts in a manner consistent with enabling debtors to obtain a meaningful discharge. *Id.* at 583–84. *See also In re Spisak*, 2 B.C.D. 1592, 1593 (Bankr. D.N.J.1977) ("The question ... is a pure policy question. There is no language in the statute that commands a particular result.") Notwithstanding *Gray*'s compelling rationale, it gained scant following outside this district. *See In re Holden*, 101 B.R. 573, 575 (Bankr.N.D.Iowa 1989) (describing *Gray* and *Deihl* as "a splinter of authority").

Under the Act, the majority held that compensation could not be had for counsel's pursuit of legal rights or remedies solely for the benefit of the debtor, such as securing a discharge of indebtedness. *See,*

*e.g., In re Jones*, 665 F.2d 60 (5th Cir.1982) (per curiam); *In re Orbit Liquor Store*, 439 F.2d 1351, 1354 (5th Cir.1971); *In re Rothman*, 85 F.2d 51 (2d Cir.1936).[9] *See also Gray*, 7 C.B.C. at 578 (acknowledging majority rule). *See generally* 3A Collier ¶ 62.31[1] (14th ed. 1975). The Tenth Circuit's ruling in *Lewis v. Fitzgerald*, 295 F.2d 877 (10th Cir.1961), characterizes the majority:

> The granting or denial of a discharge is personal to the bankrupt. It has nothing to do with the preservation of the estate. And therefore professional service of an attorney in representing the bankrupt in resisting objections to the granting of a discharge are not services which are compensable out of the bankrupt estate.

295 F.2d at 879.

Thus, prior to the Code's enactment, the majority of courts considering the issue left the debtor to fend for himself or herself in funding a dischargeability defense.

### 3. Fees Under § 523: Out in the Code.

Congress initially responded to the problems discussed in *Gray* by bringing many potentially abusive dischargeability cases within the bankruptcy courts' exclusive jurisdiction.[10] Later, in enacting the Code, Congress included § 523(d) to answer the concerns about representation and ability to defend that *Gray* describes.

The Kingsburys have not invoked § 523(d). They concede that the compensation sought here falls outside that provision, but argue that the estate should pay their attorney. Though applicability of § 523(d) is therefore not at issue, a brief discussion of its purpose and scope provides context for today's decision.

---

lowed for "the carrying out of the provisions of the Act." *Pender,* 289 U.S. at 476, 53 S.Ct. at 704; quoted in *Gray,* 7 C.B.C. at 579. *Gray* carefully analyzed the holdings of five cases cited in *Pender,* three of which approved compensation for defense of dischargeability complaints. 7 C.B.C. 580–83.

  *Gray* reviewed *Randolph v. Scruggs,* 190 U.S. 533, 539, 23 S.Ct. 710, 713, 47 L.Ed. 1165 (1902), in which the Court stated, "We are not prepared to go further than to allow compensation for services which were beneficial to the estate." *Id.* A close reading of *Randolph's* facts led the

court to conclude that *Randolph* stood only for the proposition that services were compensable if not "detrimental to the estate." *Gray,* 7 C.B.C. at 580.

9. *Gray* acknowledged that *Rothman* effectively overruled *In re Kross,* 96 F. 816, 819 (S.D.N.Y. 1899), one of the cases allowing compensation to debtor's counsel for defending a dischargeability action that had been cited by the Supreme Court in *Pender.*

10. *See* Countryman, *supra* n. 7, at 24–25.

Section 523(d) provides that creditors may be required to pay a consumer debtor's [11] counsel fees in an unsuccessful dischargeability action:

If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorneys' fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. § 523(d).[12] Enacted against the backdrop of the overwhelmingly adopted rule under which debtors paid for their own dischargeability defense, "[t]he purpose of [§ 523(d)] is to discourage creditors from initiating false financial statement exception to discharge actions in the hopes of obtaining a settlement from an honest debtor anxious to save attorneys's fees." H.R.Rep. No. 95–595 at 365; S.Rep. No. 95–989 at 80, U.S.Code Cong. & Admin.News 1978, pp. 5787, 3866, 6321. *See generally* Lawrence P. King, 3 *Collier on Bankruptcy* ¶ 523.12 (15th ed. 1992).

In § 523(d) Congress did not create a panacea. The section addresses limited classes of debts and proceedings. But it stands as the legislative rejoinder to *Gray,* which spoke to the "paramount importance" of the discharge in "consumer or nonbusiness" bankruptcies. 7 C.B.C. at 583.[13] Courts of appeal that have decided the issue hold that the enactment of

§ 523(d) precludes an award of compensation for successful defense of dischargeability actions addressing non-consumer debts. *Citizens Nat'l Bank v. Burns (In re Burns),* 894 F.2d 361 (10th Cir.1990); *Zolg v. Kelly (In re Kelly),* 841 F.2d 908 (9th Cir.1988); *In re Booth,* 858 F.2d 1051 (5th Cir.1988). As explained by one bankruptcy court:

This section did not exist under the Act, [cite], and represents a limited exception to the rule that debtors bear their own expenses while attempting to obtain a discharge. Commercial debtors are not so fortunate, and must rely instead on Bankruptcy Rule 9011 or on the Court's equitable powers for the recovery of attorney fees resulting from a bad-faith complaint.

*In re Epstein,* 39 B.R. 938, 940–41 (Bankr. D.N.M.1984), *citing Banker's Trust Co. v. Lichstrahl (In re Lichstrahl),* 27 B.R. 733 (Bankr.S.D.Fla.1983); *Grove v. Fulwiler (In re Fulwiler),* 624 F.2d 908 (9th Cir. 1980) (Act case); *Rainey v. Warren (In re Warren),* 7 B.R. 546 (Bankr.M.D.Ga.1980).

This court concurs. Congress changed the prevailing bankruptcy law to provide for fee shifting in some consumer dischargeability cases. It enacted § 523(d) in light of the Act's rule that debtors (not unsuccessful creditors or the estate) bore the costs of dischargeability defense.

### 4. A Different *Deihl:* Compensation Under § 330.

■ Notwithstanding § 523(d)'s unavailability here, the debtors argue for payment

---

**11.** The Code does not define "consumer debtor." However, § 101(8) states that consumer debt is "debt incurred by an individual primarily for a personal, family, or household purpose."

**12.** Consequently, there is more than one reason which § 523(d) does not apply here. First, the dischargeability actions did not involve consumer debts: The claims arising from the Lord and Valentine transactions related to dairy cattle used in the debtors' business. The debtors make no attempt to portray them as consumer debts within the meaning of § 101(8). Further, even if consumer debts were involved, the *Valentine* matter was resolved by a settlement which acknowledged some liability and did not

address fees. In the *Lord* action, the debtors sought no fees assessment.

**13.** Indeed, although § 523(d) represents fee shifting on a scope more limited than the administrative compensation rule announced in *Gray,* it may work to compensate debtor's counsel more regularly and effectively. *In re Spisak,* 2 B.C.D. 1592 (Bankr.D.N.J.1977), following *Gray,* observed that there are no assets from which administrative compensation might be paid in "most cases" where the *Gray* rule applied. 2 B.C.D. at 1594. Thus, enacting a limited provision shifting fees to the (presumably solvent) objecting creditor in appropriate cases can be seen as a measure to answer *meaningfully* abuses in discharge litigation.

of their attorney fees from the estate via § 330(a) which provides, in pertinent part:

[T]he court may award ... to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such ... attorney ... based on the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

One of the rare Code-era opinions authorizing administrative compensation for the defense of a dischargeability action is from this district, *In re Deihl*, 80 B.R. 1. *Deihl* continued the *Gray* rule, but did so relying only on Act-era case law. Notwithstanding the considerable body of contrary authority, *Deihl* adopted *Gray*'s premise that Congress implicitly intended to compensate debtors' attorneys when it moved dischargeability actions into the bankruptcy court. 80 B.R. at 2 (citing, *inter alia, In re Jones*, 665 F.2d 60; *Lewis v. Fitzgerald*, 295 F.2d 877; *In re Moore*, 57 B.R. 270 (Bankr.W.D.Okla.1986); *In re Lee*, 3 B.R. 15 (Bankr.N.D.Ga.1979)). *Deihl* did not discuss the impact of the Code and § 523(d) on the *Gray* rule. Rather, the court emphasized the importance of the fresh start and commented that, "[A] rigid rule to disallow attorney's fees rendered in defense of a non-dischargeability action is inappropriate." 80 B.R. at 2, *quoting In re Spisak*, 2 B.C.D. 1592, 1594 (Bankr.D.N.J. 1977).[14]

The cases hold that services of debtor's counsel can be compensated under § 330 only if they benefit the estate. Services that benefit the debtor exclusively should not be paid for by the estate. *In re Reed*, 890 F.2d 104, 105–06 (8th Cir.1989) (per curiam); *Rubner & Kutner, P.C. v. U.S. Trustee (In re Lederman Enterprises, Inc.)*, 143 B.R. 772 (D.Colo.1992); *In re Walter*, 83 B.R. 14, 19 (Bankr. 9th Cir. 1988); *In re Greene*, 138 B.R. 403, 408 (Bankr.S.D.N.Y.1992); *In re Office Products of America, Inc.*, 136 B.R. 983, 988 (Bankr.W.D.Tex.1992); *In re Hunt* 59 B.R. 842, 843 (Bankr.N.D.Ohio 1986); *In re Maller Restaurant Corp.*, 57 B.R. 72 (Bankr. E.D.N.Y.1985).[15] "Case law is well-settled that an attorney for a debtor in a Chapter 7 case is not entitled to compensation out of the estate for services beneficial to the debtor and that defense of a non-dischargeability action is not compensable out of the estate." *In re Cleveland*, 80 B.R. 204 (Bankr.S.D.Cal.1987) (collecting cases). *Accord, In re Latham*, 131 B.R. 238, 239 (Bankr.S.D.Fla.1991); *In re Lilliston*, 127 B.R. 119, 121 (Bankr.D.Md.1991); *In re Leff*, 88 B.R. 105, 108 (Bankr.N.D.Tex. 1988).

In relation to adversary proceedings, as well as to case administration, the trustee is the guardian of the estate's interests. *See* § 704. In contrast, the Chapter 7 debtor's counsel may provide a limited range of compensable services, circumscribed by the requirements of necessity, reasonableness and benefit to the estate. *See In re Leff*,

---

**14.** *Deihl* overlooked *In re Archangeli*, 6 B.R. 50, 2 C.B.C.2d 1209 (Bankr.D.Me.1980), a Code decision by Judge Cyr, who had earlier authored *Gray*. *Archangeli* refused to enter a fees award against an unsuccessful dischargeability plaintiff under § 523(d). Without adverting to *Gray* (because a request for administrative compensation was not then pending), he stated:

Since this consumer debt has been determined dischargeable in an action initiated ... under Bankruptcy Code § 523(a)(2) ... § 523(d) requires that the court grant judgment against the plaintiff and in favor of the debtor for costs and a reasonable fee to counsel for the debtor, unless to do so would be clearly inequitable. By reason of the fact that the Bank has demonstrated an actual intent to deceive on the part of the debtor, it is the view

of the court that the Bank initiated this action in good faith. Accordingly, the court concludes that it would be inequitable to award either costs or attorney fees to the debtor in these circumstances.

6 B.R. at 53, 2 C.B.C.2d at 1212. *Archangeli* implicitly recognizes the legislative determination through § 523(d) of what circumstances warrant reimbursement of a successful dischargeability defendant's legal fees. It also can be seen as limiting *Gray* in another fashion. At least one court had read *Gray* as envisioning compensation of dischargeability defense costs whether the debtor was successful or not. *Spisak*, 2 B.C.D. at 1593.

**15.** *Cf.* Act-era authorities cited at page 583, *supra*.

88 B.R. at 108–09 (non-exclusive list of compensable tasks for Chapter 7 debtor's counsel). *See also In re Casco Bay Lines,* 25 B.R. at 756 (benefit to the estate to be considered in assaying worth of services performed); *C & A Enterprises, Inc.,* 132 B.R. 303, 309 (Bankr.W.D.Pa.1991) ("[H]ours were spent by [debtor's] counsel *after* the case had been converted … to a chapter 7 and counsel to debtor had been rendered superfluous."). The words of another dairy farm liquidation case describe the situation exactly:

> [T]he debtors' attorney … served the debtors very well in obtaining the settlement and dismissal of the trustee's objections to their exemptions and discharge, and he should be paid for those services. However, he should be paid by the debtors and not by the estate. Attorneys are not entitled to be paid fees and disbursements from the bankruptcy estate for time spent defending the debtor from complaints seeking to deny discharge and complaints to determine dischargeability.

*In re Oberreich,* 109 B.R. 936, 938 (Bankr. E.D.Wisc.1990).

Under the *Deihl* rule, Chapter 7 trustees might be prevented from completing case administration while dischargeability suits remained pending. The instant case shows this clearly: a fairly straightforward liquidation, it remains open more than three years after filing the petition. Administrative problems would be compounded under the minority rule: Lacking control over litigation, the trustee could only watch as debtors' attorney fees swallowed up substantial portions of the assets collected to pay creditors and administration expenses.

The majority rule does not deny the Chapter 7 debtor assets with which to pay the price of his or her dischargeability defense. In some cases, the statutory fee-shifting provisions come into play. More importantly, the Code sets aside resources that a debtor may devote to his or her defense, including exempt assets and post-petition earnings. *In re Lilliston,* 127 B.R. at 122; *In re Leff,* 88 B.R. at 109. " 'This approach furthers the 'fresh start' objective of the Bankruptcy Code while not putting the full burden of the debtor's legal expenses on the estate and, consequently, the creditors.' " *Id.* (quoting *In re Hunt,* 59 B.R. 842, 844 (Bankr.N.D.Ohio 1986) and *In re Zweig,* 35 B.R. 37, 38 (Bankr.N.D.Ga. 1983)).

The rule adopted today is not so broad or inflexible to bar unqualifiedly administrative compensation for debtors' counsel fees associated with defense of dischargeability actions. In some circumstances, actions taken in the course of dischargeability litigation may be so thoroughly intertwined with properly compensable services that it is pointless to sort them out. *See, In re Murray,* 132 B.R. 808, 810 (Bankr.D.Mass. 1991). In this instance, that is not so.

### CONCLUSION

The Kingsburys benefitted by their attorney's services in resolving dischargeability disputes. But, under the Code, the cost of those services is not the estate's administrative obligation. That portion of the debtors' counsel's fee application seeking administrative compensation for services rendered in defense of dischargeability complaints is disallowed. A separate order consistent with this opinion will issue forthwith.