**In re MFLEX CORPORATION, Debtor.**

**Bankruptcy No. 93–12107–LK.**

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

May 3, 1994.

---

McNery & Voelker, Tory L. Voelker, Round Rock, TX, for debtor.

Berry Spears, Austin, TX, for trustee.

### MEMORANDUM OPINION ON FIRST AND FINAL APPLICATION OF McNERY & VOELKER, P.C. FOR COMPENSATION FOR THE PERIOD AUGUST 2, 1993 THROUGH FEBRUARY 28, 1994

LARRY E. KELLY, Chief Judge.

Came on for hearing on April 20, 1994 the First and Final Application of McNery & Voelker, P.C. for Compensation in the above-styled and numbered case. After hearing the evidence and arguments of counsel, the court took the matter under advisement, and has now determined that the First and Final Fee Application of McNery & Voelker, P.C. shall be disallowed in its entirety as to the request for fees and allowed in the amount of $760.00 for reimbursement of expenses, to reimburse the Applicant for filing fees. Pursuant to Federal Rule of Bankruptcy Procedure 7052, the following constitutes the court's findings of fact and conclusions of law. Where appropriate, findings of fact shall be deemed conclusions of law and conclusions of law shall be deemed findings of fact. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (E).

### Findings of Fact

1. MFlex Corporation (the "Debtor") filed its voluntary petition under Chapter 11 on August 2, 1993.

2. The law firm of McNery & Voelker, P.C. filed its ex parte Application to be employed as counsel for the Debtor and on August 23, 1993, this court entered an order authorizing such employment. The legal representation furnished by this law firm was primarily provided by Troy Voelker (the "Applicant").

3. The Applicant's Application Requesting Approval for Employment stated that "there is no connection between the attorneys to be hired and the Debtor, creditors, or any party in interest in this case."

4. The Disclosure of Compensation attached to the Application for Employment reflected a pre-petition retainer of $500.00.

5. The Affidavit of Proposed Attorney attached to the Application for Employment stated as follows: "I have represented Debtor in pre-petition matters regarding a possible Chapter 11 bankruptcy and regarding collection matters brought against Debtor."

6. On August 17, 1993, the Debtor filed its Schedules and Statement of Financial Affairs. Question number 9 in the Statement of Financial Affairs asks the Debtor to list all payments made to attorneys concerning bankruptcy matters within one year preceding the case. The Applicant is listed in answer to the question; however, the date of payments and the amount of payments is not provided. The Debtor filed First Amended and Second Amended Schedules and Statement of Financial Affairs later in the case, but neither amendment provides the missing information.

7. United States Trustee Exhibit No. 1 indicates that the U.S. Trustee twice requested that the Applicant provide this missing information.

8. The Debtor filed a Disclosure Statement and Chapter 11 Plan on September 14, 1993, as drafted by the Applicant. The disclosure statement was subsequently denied by the court. The plan of reorganization was withdrawn by the Debtor amid substantial opposition. The evidence indicated that the plan was not confirmable, as it violated the absolute priority rule.

9. On October 25, 1993, the court issued a show cause order to determine if a Chapter 11 trustee should be appointed in this case. After proper notice and a hearing, the court determined that a trustee should be appointed. The U.S. Trustee appointed Stephen A. Sallot III as the Chapter 11 trustee (the "Trustee").

10. On the Chapter 11 Trustee's motion, this case was converted from Chapter 11 to Chapter 7 on January 24, 1994. Stephen Sallot was appointed as the Chapter 7 trustee upon conversion.

11. After his appointment, the Trustee learned of a post-petition transfer to the Applicant of $5,000.00 on or about October 2, 1993 and requested that the funds be turned over to the estate. The Applicant did not return the funds to the estate. On December 21, 1993, the Applicant filed an Amended Disclosure of Compensation, where he revealed for the first time that he had received a pre-petition retainer in the amount of $5,000.00. He also stated in the disclosure that he had received an additional post-petition transfer from the Debtor in the amount of $5,000.00 on or about September 29, 1993. He further admitted for the first time that he was owed approximately $20,000 by the Debtor prior to the bankruptcy filing but that he had agreed to "waive" that pre-petition claim. The Applicant did not seek nor receive court approval for the $5,000.00 transferred to him by the Debtor post-petition near the end of September.

12. The Trustee's evidence at the fee application hearing indicates that the pre-petition claim of the Applicant was substantially in excess of the $20,000.00 claim which he disclosed in his Amended Disclosure of Compensation. Applicant generally acknowledged the larger sums as having been billed, but indicated that several were subject to "adjustment".

13. Trustee's Exhibit No. 10 reveals several pre-petition payments made by the Debtor to Applicant which were not disclosed at any time during this case.

14. The Applicant filed his fee application on March 21 and objections were filed by the

Chapter 7 trustee and by the U.S. Trustee. The objections highlighted three problems in this Applicant's employment and request for compensation: (1) lack of benefit to the estate, (2) failure to disclose compensation and (3) conflicts of interest and failure to disclose such conflicts.

15. The credible evidence presented at the fee application hearing demonstrated that the Applicant had a prior relationship with Barry Meakings, one of the principals of the Debtor, in that he represented him in several state court lawsuits as attorney of record as well as having represented Mr. Meakings in his personal Chapter 7 bankruptcy filed on March 11, 1991.

16. The Applicant also represented Raymond Vinton, the 100% shareholder of the Debtor, in the same state court lawsuits referenced above. From the beginning of this corporate Debtor's bankruptcy case, these two principals of the corporation had an antagonistic relationship and disputes ensued concerning control of the corporation. One of the Applicant's first actions in the case was to file an Application for Temporary Restraining Order, requesting that the court determine "the rights of Meakings and Vinton with regard to the ownership of Debtor's stock and determine who is entitled to make decisions on behalf of the corporation."

17. In this case, there was evidence of preferences and fraudulent transfers, yet the Applicant filed no avoidance actions while in charge of the case. Furthermore, during the course of the Chapter 11 proceedings it became apparent that reorganization of this Debtor was not feasible, yet the Applicant let the business continue operating, to the detriment of the creditors.

18. The Applicant is an experienced bankruptcy attorney, having practiced in the bankruptcy field since 1985 and having represented debtors in approximately 20–25 Chapter 11 cases. The Applicant testified that he is familiar with the obligations of counsel for a Chapter 11 debtor.

### Conclusions of Law

*Services of Counsel Did Not Benefit the Estate*

■ 1. Although it is not necessary to have a successful reorganization in order for Debtor's counsel to be paid, the Applicant's contribution in this case was questionable. The disclosure statement drafted by Applicant was denied by the court. The Chapter 11 plan authored by the Applicant was withdrawn in light of the substantial opposition it faced from creditors. The Applicant underestimated the ability of this Debtor to reorganize and overlooked the unwillingness of creditors to work out a successful reorganization with this particular debtor. The only two principals of the company had a material dispute over ownership of the stock of the Debtor, and Applicant was the legal attorney of record for each in one or more pending state court actions. The evidence presented by the U.S. Trustee at the hearing demonstrated that the plan proposed by the Debtor was never realistically confirmable. It violated the absolute priority rule found in 11 U.S.C. § 1129.

■ 2. In *In re Lederman Enterprises, Inc.*, the District Court in Colorado faced a situation analogous to this case in which a creditor, the trustee and the U.S. Trustee challenged the fee request of Debtor's counsel as not providing a benefit to the estate. *In re Lederman Enterprises, Inc.*, 143 B.R. 772 (D.Colo.1992) Several of that court's observations are instructive here. The court recognized that Debtor's counsel's fee request should not be denied solely because the reorganization was not successful, but that it was a factor to be considered. *Lederman Enterprises, Inc.* at 775, *citing In re Greene*, 138 B.R. 403, 408 (Bankr.S.D.N.Y.1992) The court further recognized a concept with which this court strongly agrees: "Chapter 11 cases which lack viable chances of reorganization may place the fees of counsel at risk." *Id.* at 775, *quoting In re Offield*, 128 B.R. 548, 550 (Bankr.W.D.Mo.1991); *See also In re Office Products of America, Inc.*, 136 B.R. 983, 990–91 (Bankr.W.D.Tex.1992) As the *Lederman* court observed, at some point counsel for the Debtor should have recognized that reorganization was not feasible and that services of counsel in that direction would be of no benefit to the estate. *Lederman Enterprises, Inc.* at 775.

3. 11 U.S.C. § 329(b) gives the court the authority to "order the return of any . . . payment, to the extent excessive" if the court finds that "such compensation exceeds the reasonable value of any such services." The Applicant did some work that benefitted the estate by working out some tax claims, but these services were of no material benefit to the estate, especially in light of Applicant's actions and omissions which proved to be a detriment to creditors and a fraud upon this court.

*The Effect of Nondisclosure of Compensation*

4. 11 U.S.C. § 329(a) provides that "any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid . . ." See also Bankruptcy Rules 2014(a) and 2016(b).

■ 5. The Applicant materially understated his pre-petition retainer initially and failed to provide an explanation at the fee application hearing. See Trustee's Exhibit No. 3. He also failed to disclose pre-petition payments made to him by the Debtor. See Trustee's Exhibit No. 10. The Applicant received an additional $5,000.00 post-petition from the Debtor, and did not disclose this transfer until the Trustee requested its return. Furthermore, the Applicant did not disclose his substantial pre-petition claim and his agreement to waive such claim until several months after filing of the case. For the waiver of the claim to be enforceable, there had to be consideration, i.e. continued employment. Therefore, the waiver should have been disclosed as part of the compensation package.

■ 6. The intentional filing of a false Application or other pleading is a blatant violation of the obligation of candor to the court and fiduciary obligation to the estate. TEX.GOV'T CODE ANN. T. 2, Subt. G, App. A, Art. 10, § 9, Rule 3.03 (Vernon Supp. 1994); *See also Matter of Evangeline Refining Co.*, 890 F.2d 1312 (5th Cir.1989) Several

courts, including the Fifth Circuit, have found that a fraud on the court may warrant denial of all compensation. *Matter of Evangeline Refining Co.*, 890 F.2d at 1323–24; *Matter of Futuronics Corp.*, 655 F.2d 463 (2d Cir.1981)

■ 7. In *Matter of Evangeline Refining Co.*, the trustee and attorney for the trustee filed fee applications which had been reconstructed after a lapse of time. Some of the time entries seemed unreasonable to the court, especially those in which counsel billed in excess of twenty four hours a day. Other evidence presented to the court led the judge to believe that the applicants were not candid in their fee applications. The bankruptcy judge held back a portion of the fees. On appeal, the district court held back an even larger portion of the fees. On appeal to the Fifth circuit, the court found that all fees should be disallowed in a situation where counsel filed fraudulent fee applications, containing substantial misrepresentations, and found that remand was appropriate for a determination of whether the misrepresentations in these fee applications required a complete denial of fees. The circuit court stated in its opinion as guidance on remand, "When a trustee or attorney for the trustee intentionally misrepresents facts to the court in a fee application or in related proceedings, a mere reduction in fees would clearly be an inadequate deterrent." *Matter of Evangeline Refining Co.*, 890 F.2d at 1324. Although the *Evangeline* case involved a fee application filed by the trustee and attorney for the trustee, this court believes that the principles apply equally in the situation of an application for employment and disclosure of compensation filed by the attorney for the debtor.

8. In the case at bar, this court concludes that the Applicant intentionally misrepresented facts to the court in the context of employment by the estate, and that a mere reduction in fees would be an ineffective deterrence. Where such misrepresentations are significant and serious, as in this case, all compensation should be denied to the attor-

ney. In the context of a Chapter 11 proceeding, where the attorney represents the debtor-in-possession, a fiduciary of the bankruptcy estate, the attorney is held to the higher standard of a fiduciary and the consequences of deceit are grave.

*Counsel's Conflict of Interest in Representing Chapter 11 Corporate Debtor and the Effect of Nondisclosure of Conflicts*

■ 9. As stated previously in the Findings of Fact, the Applicant had a prior relationship with the Debtor and with the principals of the Debtor, Barry Meakings and Raymond Vinton. The Applicant represented the Debtor, Mr. Meakings and Mr. Vinton in state court litigation as attorney of record. The Applicant also represented Mr. Meakings in his Chapter 7 bankruptcy proceeding, Case No. 91–10901 filed in March of 1991.

10. The Application for Employment filed by Applicant states, "there is no connection between the attorneys to be hired and the Debtor, creditors, or any party in interest in this case." The Affidavit of Proposed Attorney executed by the Applicant and attached to the Application for Employment discloses only that the Applicant "represented Debtor in pre-petition matters regarding a possible Chapter 11 bankruptcy and regarding collection matters brought against Debtor."

11. 11 U.S.C. § 327(a) provides that the trustee (or in Chapter 11 cases, the debtor in possession) "may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons ..." [1]

11 U.S.C. § 328(c) allows the court to

deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds

an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

Bankruptcy Rule 2014(a) also provides for full disclosure of the attorney's connections with the debtor, creditors, or any party in interest.

■ 12. If an attorney employed to represent the estate holds an undisclosed adverse interest, a court has the power to deny all compensation. *In re Kendavis Industries International, Inc.,* 91 B.R. 742, 748 (Bankr. N.D.Tex.1988) As the *Kendavis* court observed, there is no such concept as a potential conflict of interest; each conflict is actual and arises the date that representation begins. *Id.* at 754.

13. In the Applicant's prior representation, he advocated the interests of Barry Meakings, individually, in his Chapter 7 bankruptcy filing. He also was cast in the role of advocate for Meakings individually, for Raymond Vinton individually, and for MFlex Corporation when he defended their interests in the state court litigation. Thereafter, the Applicant did pre-bankruptcy counseling for the Debtor corporation and, at some point, assisted the principal and/or principals of the corporation in making the decision to put the company in bankruptcy. Because of the lack of disclosure of the Applicant's prior connections with this Debtor and its principals, the court cannot determine whose interests the Applicant truly represented. The court further cannot determine if the Applicant even had the proper authority to file a bankruptcy petition on behalf of the corporation. Shortly after the filing of this bankruptcy petition, the interests of these principals, Meakings and Vinton, sharply diverged. Hence, the temporary restraining order requested by the Applicant. At this point in the case, in what was essentially a multiple representation, it was no longer disputable that a conflict of interest was present and would likely hamper the reorganization of this Debtor.

---

1. 11 U.S.C. § 101(14) defines "disinterested person" as one who "does not have an interest materially adverse to the interest of the estate ... by reason of any direct or indirect relationship to, connection with, or interest in the debtor ... or for any other reason."

860

14. At the fee application hearing, the Trustee alleged that the Applicant actually represented the interests of the principal Barry Meakings, rather than the Debtor, MFlex Corporation. The evidence presented at the fee application hearing tends to support the allegation. In light of the Applicant's duty to represent only the interests of the bankruptcy estate and to act only in the best interest of the estate and its creditors, this allegation is serious and the consequences of failure to uphold that duty are serious as well. Rule 1.12 of the Texas Disciplinary Rules of Professional Conduct provides that "[a] lawyer employed or retained by an organization represents the entity." TEX.GOV'T CODE ANN. T. 2, Subt. G, App. A, Art. 10, § 9, Rule 1.12 (Vernon Supp. 1994). If the attorney is actually engaged in a multiple representation, the ethical rules require certain disclosures and waivers be obtained from the clients. TEX.GOV'T CODE ANN. T. 2, Subt. G, App. A, Art. 10, § 9, Rule 1.06 (Vernon Supp.1994) Multiple representation carries with it many risks to the parties involved. In many situations in which the same attorney acts for multiple parties having a common interest, neither party may exercise the attorney-client privilege in subsequent controversy with the other. *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir.1970)

15. Another reason disclosure of conflict of interest is so meaningful, especially in this case, is to enable the court to determine if a trustee should be in control of the case. In the case at bar, the prior state court lawsuits alleged fraud and mismanagement of the principals of the corporation. Upon filing the bankruptcy, the principal, who was already accused of mismanagement, was allowed to manage a debtor in possession in its attempt at reorganization. The factual background of this case probably justified the appointment of a trustee from inception.

16. Another case from the learned bankruptcy bench in the Northern District of Texas provides guidance for this court in the area of conflict of interest. *In re Michigan General Corp.*, 77 B.R. 97 (Bankr.N.D.Tex.

1987) A law firm with previous connections to the debtor corporation which were not properly disclosed to the court was denied compensation in the case even prior to the filing of a request for compensation. On the law firm's motion for rehearing, the court reemphasized its earlier ruling and held that the counsel's failure to understand the requirements for broad disclosure of conflicts of interest did not excuse their failure to disclosed possible conflict of interest. *In re Michigan General Corp.*, 78 B.R. 479 (Bankr. N.D.Tex.1987) In support of its holding, the court stated:

> It is the duty of the attorney to reveal all connections. [Rule 2014] does not give the attorney the right to withhold certain information on the grounds that, in the attorney's opinion, the connection is of no consequence or is not adverse. If the duty to properly disclose is neglected, however innocently, the attorney performs services at his peril.

*Michigan General Corp.*, 78 B.R. at 482, citing *In re Coastal Equities, Inc.*, 39 B.R. 304, 308 (Bankr.S.D.Cal.1984)

17. The Fifth Circuit, quoting Collier on Bankruptcy, has held that the requirement of disinterestedness

> appears broad enough to include anyone who in the slightest degree might have some interest or relationship that would color the independent and impartial attitude required by the Code ... Indirect or remote associations or affiliations, as well as direct, may engender conflicting loyalties.

*In re Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1256 (5th Cir.1986)

18. Based on this analysis, the court concludes that because of Applicant's breach of his duty to disclose his connections with this Debtor and its principals, all compensation requested for work performed in this case must be denied.

### Conclusion

The applicant bears the burden of proof in a fee application case. *Matter of*

*U.S. Golf Corp.,* 639 F.2d 1197, 1207 (5th Cir.1981) The evidence at the fee application hearing revealed that this Debtor had no reasonable possibility of reorganizing at this point in time. The creditors were not in favor of reorganization and the plan had little chance of being confirmed. The evidence also demonstrated that the Applicant failed in many respects to make proper disclosure to the court as required by the Bankruptcy Code, the Bankruptcy Rules and the Texas Disciplinary Rules of Professional Conduct. Based on the legal authority reviewed by the court and its application to the facts of this case, the court concludes that because the services provided by the Applicant provided no substantial benefit to the estate and because the Applicant failed to properly disclose his compensation and his conflicts of interest, all compensation requested by the Applicant shall be disallowed. The court will enter an Order effectuating its Findings of Fact and Conclusions of Law of even date herewith.

*ORDER DISALLOWING FIRST AND FINAL APPLICATION OF McNERY & VOELKER, P.C. FOR COMPENSATION FOR THE PERIOD AUGUST 2, 1993 THROUGH FEBRUARY 28, 1994*

Came on for hearing on April 20, 1994 the First and Final Application of McNery & Voelker, P.C. for Compensation in the above-styled and numbered case. After hearing the evidence and arguments of counsel, the court took the matter under advisement, and has now determined that the First and Final Fee Application of McNery & Voelker, P.C. shall be disallowed in its entirety as to the request for fees and allowed in the amount of $760.00 for reimbursement of expenses, to reimburse the Applicant for filing fees. All other amounts requested for expense reimbursement are disallowed. Pursuant to Federal Rule of Bankruptcy Procedure 7052, the court made its findings of fact and conclusions of law in a Memorandum Opinion entered of even date herewith. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (E). It is therefore

**ORDERED** that the First and Final Fee Application of McNery & Voelker, P.C. is hereby DISALLOWED in its entirety as to the request for fees and allowed in the amount of $760.00 for reimbursement of expenses, to reimburse the Applicant for filing fees. All other amounts requested for expense reimbursement are disallowed. Any money held by the Applicant belonging to this estate, including retainers or amounts in escrow, shall be returned to the Chapter 7 trustee and if not returned within 10 days of the date of this Order, the Trustee is authorized to bring an action to recover those funds.

IT IS SO ORDERED.